IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       :
PHILIP SULLIVAN AND                                    :        3:08 CV 471 (CSH)
CHARLOTTE SULLIVAN                                     :
                                                       :
v.                                                     :
                                                       :
JAMES HYLAND ET AL.                                    :
                                                       :        DATE: NOVEMBER 21, 2008
-------------------------------------------------------x
```

RECOMMENDED RULING ON DEFENDANTS' MOTIONS TO DISMISS

_____On March 31, 2008, <u>pro se</u> plaintiffs Philip and Charlotte Sullivan filed an action under

42 U.S.C. § 1983 against defendants James Hyland, Maryanne Delisa, Gregory Zigmont,

Charles Coffey, Terri Sonneman and John Malone (Dkt. #1),[1] claiming that the state criminal

action commenced and prosecuted against Philip Sullivan was a "reckless and/or willful

and/or wanton" act committed with "deliberate indifference and/or malice and reckless

disregard" of plaintiffs' First, Fourth, Sixth and Fourteenth Amendment rights, as well as in

violation of their rights under Article One, Sections 7 and 9, of the Connecticut Constitution,

including claims for malicious prosecution, false arrest and abuse of process. (<u>Id</u>. at 1, 3).

Plaintiffs assert that the criminal action against plaintiff Philip Sullivan ended in his favor and

was dismissed for lack of evidence, without objection by the prosecutor. (<u>Id.</u> at 3, 9).

One month later, on April 30, 2008, plaintiffs filed their Revised Complaint. (Dkt. #3).

On August 4, 2008, plaintiffs filed an Amended Civil Rights Complaint, in which they added

---

[1]All defendants are sued in their individual capacities. Defendants Hyland and Delisa are
private citizens; defendants Zigmont and Coffey are criminal inspectors for the State of
Connecticut; defendants Sonneman and Malone serve as prosecutors for the State of Connecticut.
(Dkt. #1, <u>Parties</u>, ¶¶ 2-7).

Defendant Hyland is married to plaintiff Philip Sullivan's sister, Kathryn Hyland; defendant
Delisa is Philip Sullivan's sister. (<u>Id.</u>, Count I, ¶ 1). <u>See</u> note 9 <u>infra</u>.

a claim for violation of their Fifth Amendment rights. (Dkt. #18). The Amended Civil Rights Complaint asserts three counts: conspiracy under color of law to maliciously prosecute plaintiff Philip Sullivan without reasonable basis or probable cause in a state criminal action which ended in his favor (Count I); conspiracy under color of law to falsely arrest plaintiff Philip Sullivan and deprive him of his Fourth, Fifth and Fourteenth Amendment rights in a criminal action which ended in his favor (Count II); and conspiracy under color of law to abuse the process of arrest and deprive plaintiff Philip Sullivan of his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights in a state criminal action which ended in his favor (Count III).

There are three motions to dismiss pending before this Court. First, on August 25, 2008, defendant Delisa filed her Motion to Dismiss, and brief and exhibits in support. (Dkts. ##21-23).[2] Second, four days later, defendants Zigmont, Coffey, Sonneman and Malone [collectively "State Defendants"] filed their pending Motion to Dismiss, and brief and exhibits in support. (Dkts. ##24-25).[3] And last, on the same day, defendant Hyland filed his pending

---

[2]The three exhibits in Dkt. #23 are copies of plaintiffs' Amended Complaint, dated August 9, 2003, in Sullivan v. Stein, No. 3:03 CV 1203 (MRK)["Sullivan III"](Exh. A), and of U.S. District Judge Mark R. Kravitz's forty-two page Memorandum of Decision, filed May 21, 2004 ["Judge Kravitz's Ruling"], granting defendant Delisa's Motion to Dismiss (Exh. B).

[3]The following nine exhibits were attached to their brief (Dkt. #25): another copy of Judge Kravitz's Ruling, published at 2004 U.S. Dist. LEXIS 9438 (D. Conn. May 21, 2004)(Exh. 1 & Dkt. #25-2); copy of Judge Kravitz's Memorandum of Decision, filed February 7, 2005, published at 2005 U.S. Dist. LEXIS 2840 (D. Conn. Feb. 7, 2005)["Judge Kravitz's Joinder Ruling"](Exh. 2 & Dkt. #24-3); copy of plaintiffs' Second Amended Complaint, filed October 3, 2005, in Sullivan III (Exh. 3 & Dkt. #25-4); copy of the fifty-two page CM/ECF Docket Sheet in Sullivan III (Exh. 4 & Dkt. #25-5); copy of Connecticut Superior Court Judge Michael R. Sheldon's Memorandum of Decision on Motion In Limine, filed March 11, 2005, published in 2005 Conn. Super. LEXIS 720 (Conn. Super. Ct. Mar. 11, 2005)["Judge Sheldon's Ruling"] in State of Connecticut v. Philip Sullivan, No. CR 01106675 (Exh. 5 & Dkt. #25-6); and copies of other published decisions (Exhs. 6-9 & Dkts. ##25-7 to 25-10).

Motion to Dismiss and brief in support. (Dkts. #26-27).[4]

 On September 22, 2008, plaintiffs filed their brief in opposition and/or Motion for Stay. (Dkt. #28).[5] On October 2, 2008, defendant Hyland and the State Defendants filed their reply briefs (Dkts. ##33-34); the next day, defendant Delisa filed her reply brief (Dkt. #32). On September 24, 2008, United States District Judge Janet Bond Arterton referred these pending motions to this Magistrate Judge (Dkt. #29). On October 20, 2008, the case was transferred to Senior United States District Judge Charles S. Haight. (Dkt. #35).[6]

For the reasons stated below, all three Motions to Dismiss (Dkts. #21, 24 & 26) are **granted** and plaintiffs' Motion to Stay (Dkt. #28) is **<u>denied</u>**.

<u>I. FACTUAL AND PROCEDURAL BACKGROUND</u>

This lawsuit, filed on March 31, 2008, is the fourth civil action arising from a family dispute that took place in 2000. The following underlying facts are described in the Connecticut Appellate Court's decision in <u>Sullivan v. Delisa</u>, 101 Conn. App. 605 (Conn. App. Ct. 2007).[7] Plaintiffs are husband and wife, who lived with plaintiff Philip Sullivan's mother, Mary Crowell, for thirty years in Mrs. Crowell's home. <u>Id.</u> at 607-08. In late June 2000, Mrs. Crowell informed plaintiffs that she planned to sell her home and to move into an assisted-

---

[4]Attached to the brief were excerpts from <u>Judge Kravitz's Ruling</u> in <u>Sullivan III</u>.

[5]Attached was one page, entitled "Issues Presented for Review," with five issues listed.

[6]Two additional motions are pending before the Court: (1) defendant Hyland's Motion for Injunction, filed October 2, 2008 (Dkt. #30), and (2) plaintiffs' Motion to Strike, filed October 22, 2008 (Dkt. #36). The briefing has not been completed for these two motions.

[7]These facts are also recited by Connecticut Superior Court Judge Juliette Crawford in <u>Sullivan v. Delisa</u>, No. CVN 0091831FA, 2002 WL 523076 (Conn. Super. Ct. Jan. 10, 2002), and in <u>Judge Sheldon's Ruling</u>, 2005 WL 895893, at *2. Judge Kravitz specifically relies upon Judge Crawford's factual findings in his rulings. 2004 WL 1179351, at *2 & n.2; <u>Sullivan III</u>, 2005 WL 2209301, at * 1 (D. Conn. Sept. 12, 2005); <u>Sullivan III</u>, 487 F. Supp. 2d 52, 56-59 (D. Conn. 2007)["<u>Judge Kravitz's Summary Judgment Ruling</u>"]. <u>See</u> notes 2-4 <u>supra</u>.

living facility. Id. at 608.[8] When plaintiffs refused to move out of the home in early July 2000, an argument erupted between Mrs. Crowell and her daughters[9] on the one hand, and plaintiffs on the other hand, following which plaintiffs were instructed to vacate the premises. Id. After residing with a number of other relatives, on August 1, 2000, plaintiffs entered into a lease for an apartment in Newington; Mrs. Crowell previously advised plaintiffs and again advised them to remove their personal belongings by August 6,2000, because she rented the property and intended to change the locks. Id. at 608-09. When plaintiffs finally returned to the premises on September 7, 2000, they discovered that the locks had been changed as threatened and that their personal property had been moved to the garage, whereupon eleven days later, plaintiffs sued Mrs. Crowell, Kathryn Hyland and Maryanne Delisa in Connecticut Superior Court ["Sullivan I"], with claims of forcible entry, detainer and civil theft. Id. at 609-21; Sullivan v. Delisa, No. CVN 0091831FA, 2002 WL 523076, at *1-9 (Conn. Super. Ct. Jan. 10, 2002).

The underlying facts hereafter are described in the decision of Connecticut Superior Court Judge Michael R. Sheldon in State v. Sullivan, No. CR 01106675, 2005 WL 895893

_____

[8]Plaintiffs were given the option of purchasing the house, or moving out; although the asking price was below the fair market value, plaintiffs nonetheless declined the offer on July 6, 2000. Id.

[9]Mrs. Crowell's daughters are Maryanne Delisa, a defendant in this case, and Kathryn Hyland, id. at 607-08, whose husband, James Hyland, is a named defendant in this case.

Delisa and Kathryn Hyland, both sisters of plaintiff Philip Sullivan, were trustees of a revocable trust established by their mother, Mrs. Crowell; the trust owned Mrs. Crowell's home. Id. at 607. When the sisters resigned as trustees, another was appointed to replace them; plaintiffs appealed that appointment, giving rise to "Sullivan II," which case was ultimately dismissed by the Connecticut Appellate Court, and certification was denied by the Connecticut Supreme Court in February 2007. See Sullivan v. Delisa, 281 Conn. 924 (2007).

4

(Conn. Super. Ct. Mar. 11, 2005)["Judge Sheldon's Ruling"].[10]   While the civil lawsuit in Sullivan I was proceeding, defendant James Hyland, husband of Kathryn Hyland, videotaped the contents of Mrs. Crowell's home, before he and his wife began to move plaintiffs' personal possessions in order to make the home more marketable for sale. Id. at *2.   In the course of walking through the house for this videotape, defendant Hyland discovered that plaintiff Philip Sullivan had wiretapped Mrs. Crowell's phone lines without her knowledge and had accumulated as many as one hundred audiotapes of telephone conversations.  Id. at *2-5.  Defendant Hyland notified the Farmington Police Department, and he thereafter was put in contact with defendant Zigmont.  Id. at *5-7.  After the issuance of search warrants and an investigation of plaintiff Philip Sullivan's personal property, Philip Sullivan was arrested in mid-May 2001.  Id. at *1.  However, prior to plaintiff Philip Sullivan's criminal trial, Mrs. Crowell died on April 23, 2004 at age ninety-three, rendering her affidavits and written statements as inadmissible hearsay.  Id. at *1, 2, 7-21.  As a result, the criminal case was withdrawn.  Id. at *60.

Meanwhile, a bench trial was held in Sullivan I by Connecticut Superior Court Judge Angelos dos Santos, in which judgment was entered for the defendants; Superior Court Judge Santos found that plaintiffs were not in possession of Mrs. Crowell's home on September 7, 2000 pursuant to Conn. Gen. Stat § 47a-43 et seq., that they were not tenants of Mrs. Crowell on that date, that they were not entitled to a constructive trust to be imposed

---

[10]These facts are also recited in Judge Kravitz's Ruling, 2004 WL 1179351, at *2; Sullivan III, 2005 WL 2209301, at *1 (D. Conn. Sept. 12, 2005); Judge Kravitz's Summary Judgment Ruling, 487 F. Supp. 2d at 60-62.

In January 2005, Judge Kravitz also denied plaintiffs' Motion for Preliminary Injunction to enjoin this prosecution, on the basis of Younger v. Harris, 401 U.S. 37 (1971).  Sullivan III, 2005 WL 43439 (D. Conn. Jan. 4, 2005).

on the home, and that defendants did not breach a stipulation providing plaintiffs with access to their personal property located at the home.  101 Conn. App. at 607-09.  The judgment was affirmed by the Connecticut Appellate Court in June 2007 in Sullivan v. Delisa, 101 Conn. App. 605 (Conn. App. Ct. 2007), and the Connecticut Supreme Court denied certification the next month, 283 Conn. 908 (2007).[11]

While the litigation was continuing in Sullivan I, plaintiffs filed a new lawsuit in federal court, Sullivan v. Stein, et al, 3:03 CV 1203(MRK)[ "Sullivan III"], in which they again sued Mrs. Crowell, Delisa, Kathryn Hyland, and James Hyland, along with twenty-four other defendants.[12] Sullivan III alleged violations of plaintiffs' rights under 42 U.S.C. § 1985 and 42 U.S.C. § 1983 in connection with the events leading up to and following the state court's decision in Sullivan I.  In late May 2004, Judge Kravitz issued a lengthy ruling, 2004 WL 1179351 (D. Conn. May 21, 2004)["Judge Kravitz's Ruling"], in which he dismissed all of plaintiffs' claims against the twenty-one defendants who had filed Motions to Dismiss, grouping them into three categories: (1) five Judicial Defendants; (2) four State Defendants; and (3) twelve Private Actor Defendants.  Id. at *1, 5.  First, plaintiffs' § 1983 claims against the Judicial Defendants – all of whom had been involved in Sullivan I – were dismissed under the doctrine of absolute judicial immunity.  Id. at *5-6.  Next, plaintiffs' § 1983 claims against the State Defendants – who were state prosecutors and inspectors for the Connecticut

---

[11]See also Judge Kravitz's Summary Judgment Ruling, 487 F. Supp. 2d at 59-60.

[12]Included among the twenty-eight defendants in Sullivan III were several state judges, an Assistant State's Attorney, the Town of Farmington, police officers, former attorneys for plaintiffs, and several family members of plaintiffs' family. Judge Kravitz's Ruling, 2004 WL 1179351, at *1 n.1.  Five of the defendants involved in the present case – Hyland, Delisa, Zigmont, Coffey and Sonneman – were sued in Sullivan III.  Plaintiffs sought to add the sixth defendant here -- Malone – as a defendant in Sullivan III, but Judge Kravitz denied their requests in February 2005. 2005 WL 465425 (D. Conn. Feb. 7, 2005)["Judge Kravitz's Joinder Ruling"].

Criminal Justice Division – were dismissed on the basis of absolute prosecutorial immunity and Eleventh Amendment immunity, respectively. Id. at *6-10. Last, Judge Kravitz addressed at great length the Private Defendants, who included many of plaintiffs' former attorneys and family members, dismissing all of these claims. Id. at *10-19. Plaintiffs' claims against defendants Thomas and MaryAnne Delisa, James and Kathryn Hyland, and Mrs. Crowell were dismissed for lack of sufficient facts demonstrating that any of them conspired or acted jointly with police to deny plaintiffs their constitutional rights. Id. at *13-15. Finally, Judge Kravitz concluded that efficiency and fairness would best be served by declining to exercise supplemental jurisdiction over the plaintiffs' assertions under state law, including claims for alleged violation of Article First of the Connecticut Constitution, and intentional infliction of emotional distress. Id. at *20-21.[13] In April 2007, Judge Kravitz denied plaintiffs' Motion to Renew their claims as to defendants Maryanne Delisa and James Hyland, and to amend their complaint. 2007 WL 1114028 (D. Conn. Apr. 10, 2007)["Judge Kravitz's Reconsideration Ruling"].

In late May 2007, Judge Kravitz filed his lengthy ruling granting summary judgment for the remaining defendants, Sullivan III, 487 F. Supp. 2d 52 (D. Conn. 2007)["Judge Kravitz's Summary Judgment Ruling"]. With regard to the Municipal Defendants, Judge Kravitz found that plaintiffs failed to prove their claims for equal protection and due process violations. Id. at 65-73. Judge Kravitz similarly found no basis under § 1983 for plaintiffs' claims against the remaining State Defendants – Inspectors Zigmont and Coffey – for improper search and seizure, false arrest, conspiracy, equal protection and due process, and

---

[13]See also Sullivan III, 2004 WL 2750312 (D. Conn. Nov. 18, 2004)(denying plaintiffs' multiple Motions for Reconsideration); 2005 WL 977069 (D. Conn. Apr. 19, 2005)(denying plaintiffs' Motions for Order of Certification of Immediate Appeal and for Stay Pending Determination by Second Circuit).

First Amendment retaliation.  Id. at 73-88.  As before, Judge Kravitz declined to exercise supplemental jurisdiction over plaintiffs' state law claims and claims arising under the Connecticut Constitution.  Id. at 88-89.

Two months later, plaintiffs filed their Notice of Appeal (Sullivan III, Dkt. #371), and the appeal is presently pending before the Second Circuit.

In this action now pending, plaintiffs have alleged that the six defendants -- Hyland, Delisa, Zigmont, Coffey, Sonneman and Malone[14] – conspired under color of law to commence and prosecute criminal proceedings against plaintiff Philip Sullivan in the name of his mother, Mary Crowell, by using fabricated evidence to falsely accuse Philip Sullivan of the crime of eavesdropping pursuant to CONN. GEN STAT. 53a-189.  (Amended Civil Rights Complaint, Count I, ¶ 1).  As in Sullivan I and Sullivan III, defendants Hyland and Delisa are private individuals, once again sued in their individual capacities.  However, unlike Sullivan III, in which defendants Zigmont, Coffey, and Sonneman were sued in their official capacities, here they are sued in their individual capacities "beyond the discharge of [their] official capacity."  (Id., Parties, ¶¶ 4-7).  Plaintiffs specifically allege that defendants Hyland and Delisa's purpose in initiating a false criminal complaint against plaintiff Philip Sullivan was to coerce plaintiffs into abandoning their legal rights to initiate a legal action against defendants for locking them out of their rented dwelling of thirty years. (Id., Count I).  Plaintiffs further assert that defendants Hyland and Delisa made misleading statements of material fact to defendants Zigmont and Coffey, who had reasonable cause to question their veracity and motives, yet did not do so.  (Id.).

Plaintiffs also claim that defendants Zigmont and Coffey searched the possessions

---

[14]See note 1 supra.

plaintiffs had left behind at Mrs. Crowell's home without first obtaining lawful warrants, and that they knew or had a duty to know that defendants Hyland and Delisa had "planted" evidence in plaintiffs' possessions. (<u>Id</u>., Count I, ¶ 7). Plaintiffs further allege that defendant prosecutors Sonneman and Malone failed in their duty to institute and follow proper investigative procedures before and after arresting plaintiff Philip Sullivan. (<u>Id</u>., Count I). Further, plaintiffs claim that plaintiff Philip Sullivan remained under arrest and detained in the custody of the state without probable cause for four years in violation of his First, Fourth, Fifth and Fourteen Amendments rights, and was deprived of his Sixth Amendment right to a speedy trial, thereby injuring his good standing and reputation of always doing the "right thing" throughout his life for his family and community. (<u>Id</u>., Counts II-III).

In their briefs, the State Defendants and defendant Hyland argue that this case should be dismissed under the doctrine of <u>res judicata</u> (Dkt. #25, at 11-16; Dkt. #27, at 6-12), and all defendants assert that this case should be dismissed under the doctrine of <u>collateral estoppel</u>. (Dkt. #22, at 6-8; Dkt. #25, at 16-20; Dkt. #27 at 12-13). Private defendants Hyland and Delisa also assert that even if plaintiffs' claims were not precluded by <u>res judicata</u> and <u>collateral estoppel</u>, they should be dismissed under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted for a violation under 42 U.S.C. § 1983, false arrest, malicious prosecution or abuse of process. (Dkt. #22, at 8-14; Dkt. #27, at 14-21). State Defendants assert that even if plaintiffs' claims were not precluded by <u>res judicata</u> and <u>collateral estoppel</u>, they are barred by the doctrines of absolute and qualified immunity, and are time-barred. (Dkt. #25, at 20-23).

## II. DISCUSSION

### A.  RULE 12(b) MOTIONS TO DISMISS

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 36-37 (2d Cir. 1998).  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)(citation omitted); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)(citation omitted).  The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims.  Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996)(citation omitted).  The Court may consider outside documents which are integral to the Complaint, regardless of whether attached to the Complaint, so long as the pleader has notice of them or refers to them.  See Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000)(citations omitted).  In reviewing this motion, the Court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335-36 (2d Cir. 1992)(citations omitted).

### B. DEFENDANT HYLAND

Plaintiffs allege that defendant Hyland, while having no factual or reasonable basis for doing so, conspired with defendant Delisa to prosecute criminal proceedings against plaintiff Philip Sullivan with the use of fabricated evidence.  (Amended Civil Rights Complaint, Count I, ¶¶ 1-3).  Plaintiffs allege that Hyland also conspired with defendants Zigmont and Coffey, who are state inspectors, in order to prosecute groundless charges of eavesdropping

against plaintiff Philip Sullivan, pursuant to CONN. GEN. STAT. § 53a-189. (Id., ¶¶ 4, 8). Plaintiffs claim that defendant Hyland represented to these two defendants that certain items were the personal property of plaintiff Philip Sullivan, which they were not, and made misleading statements of material fact to defendant inspectors, including that plaintiffs had moved out of the home a day or two before Mary Crowell moved out on July 6, 2000, that plaintiffs had lived at the home "rent free" for years, and that they were trying to block Ms. Crowell's sale of the home. (Id., ¶¶ 4-8). Plaintiffs claim that defendant Hyland conspired under color of law to maliciously prosecute and falsely arrest plaintiff Philip Sullivan, thereby violating his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights. (Id., ¶ 9).

In his Motion to Dismiss, defendant Hyland asserts that plaintiffs have previously asserted that he "joined with" and "conspired with" state prosecutors, state investigators and defendant Delisa to deprive plaintiffs of their federal civil rights in Sullivan III, and that Judge Kravitz dismissed plaintiffs' claims against defendant Hyland in Sullivan III because plaintiffs had not alleged sufficient facts to show that there was a violation of their civil rights. (Dkt. #27, at 4-5; see also Judge Kravitz's Ruling, 2004 WL 1179351, at *13-15). Therefore, defendant Hyland argues that plaintiffs' Amended Civil Rights Complaint against him should be dismissed under the doctrines of res judicata and collateral estoppel, and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) for failure to establish that defendant Hyland was acting "under color of law." (Dkt. #27, at 6-13).[15]

With respect to defendant Hyland's arguments under the doctrine of res judicata (id. at 6-12):

---

[15]Defendant Hyland also adopts defendant Delisa's argument regarding plaintiffs' claims for false arrest and abuse of process, arguing that plaintiffs failed to state claims for which relief could be granted as to those allegations, and that these claims are time barred. (Dkt. #27, at 21; see also Dkt. #22, at 11-14).

The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made.

Testa v. Geressy, 286 Conn. 291, 307, n.23 (2008)(quoting Powell v. Infinity Ins. Co., 282 Conn. 594, 600 (2007)).

In dismissing all claims against defendant Hyland in Sullivan III, Judge Kravitz "dealt exclusively with [p]laintiffs' claims of conspiracy, planting of evidence, 'warrantless' searching of plaintiffs' residence and effects, and [p]laintiffs' claims that defendant Hyland was a state actor or conspirator with state actors." (Dkt. #27, at 9; Judge Kravitz's Ruling, 2004 WL 1179351, at *13-15.) Defendant Hyland asserts that all of these claims against him were "considered and rejected" in Sullivan III[16], and that "[p]laintiffs are alleging the same things as alleged in Sullivan III. . . ." (Dkt. #27, at 9). Further, defendant Hyland points out that while plaintiffs' claim of false arrest is a new claim in that it was not a claim asserted in Sullivan III, it should also be dismissed under the doctrine of res judicata because plaintiffs "could have and should have made these allegations in Sullivan III . . . but failed to do so." (Dkt. #27, at 10).

Plaintiffs respond by asserting that because Sullivan III is currently pending on appeal before the Second Circuit, this Court is without jurisdiction to consider any of the issues raised by any defendant's motion to dismiss in relation to Sullivan III. (Dkt. #28, at 5).

---

[16]Judge Kravitz expressly held that plaintiffs "do not make even a de minimis showing in their Amended Complaint that there was an agreement between Mr. Hyland and Inspector Zigmont to work in concert to deprive the Sullivans of their constitutional rights . . . [and] there are no allegations that would permit the Court to treat the Hyland's . . . actions as attributable to the State itself." Judge Kravitz's Ruling, 2004 WL 1179351, at *14 (citation omitted).

Plaintiffs also argue that res judicata is an affirmative defense rather than grounds for a motion to dismiss. (Id. at 11-12). Finally, plaintiffs argue that their claims for "retaliatory and malicious prosecution," "false arrest," and "continuing abuse of criminal process" have never been litigated in any prior action brought by plaintiffs because they were not actionable at the time that the 2003 complaint was filed in Sullivan III. (Id., at 4,11-16). Plaintiffs further claim that they attempted to amend their 2003 Complaint to include these three claims, but their attempt was denied by Judge Kravitz. (Id. at 11; see Judge Kravitz's Reconsideration Ruling, 2007 WL 114028).[17]

In response, defendant Hyland asserts that plaintiffs' attempts to amend their 2003 Complaint to allege these claims were made on or after September 26, 2005, nearly sixteen months after Judge Kravitz dismissed the 2003 Complaint against Hyland and others in Sullivan III. (Dkt. #33, at 2). Defendant Hyland further argues that the fact that Sullivan III is on appeal does not limit the preclusive effect of the court's dismissal in Sullivan III. (Id.). Finally, defendant Hyland contends that while it is true that res judicata can be an affirmative defense, it can be raised in a motion to dismiss under Rule 12(b)(6) where a defendant raises claim preclusion. (Id.) Here, defendant Hyland points out that plaintiffs had referenced plaintiff Philip Sullivan's arrest as "the fruit of the unconstitutional search and seizure engaged in by the private party defendants" in Sullivan III, and that in this case,

---

[17]In denying plaintiffs' motion, Judge Kravitz held that:

[B]ecause this Court gave [p]laintiffs a final deadline of September 30, 2005, for the filing of their second amended complaint, and because the [p]laintiffs have not alleged or demonstrated any good cause for amending the complaint at this time, and further because the [p]laintiffs have already been given ample opportunity, which they have exercised numerous times, to amend their complaint in the nearly four years that this case has been pending, the Court DENIES [p]laintiffs' Motion.

Judge Kravitz's Reconsideration Ruling, 2007 WL 1114028, at *1 (emphasis in original).

plaintiffs merely add the arrest as a violation of his constitutional rights and add the claims of false arrest, abuse of process and retaliatory and malicious prosecution. (Id. at 4). Defendant Hyland asserts that "it is the <u>factual</u> predicate of the several claims asserted that determine whether <u>res judicata</u> will apply, not a litigant's ability to devise a new legal theory" and that the <u>factual</u> predicates for plaintiffs' claims existed before they filed their 2003 Complaint in <u>Sullivan III</u>. (Id.)(internal alteration omitted & emphasis in original)(citing <u>Saud v. Bank of New York</u>, 929 F.2d 916, 920 (2d Cir. 1990)).

Defendant Hyland is correct that <u>res judicata</u> can be raised in a Rule 12(b)(6) Motion to Dismiss. The Second Circuit has held that "[t]he affirmative defense of <u>res judicata</u> may be raised in a Rule 12(b)(6) motion 'when all of the relevant facts are shown by the court's own records.' Principles of <u>res judicata</u> prohibit the litigation of a claim that has already been decided on the merits." <u>Freeman v. Sikorsky Aircraft Corp</u>., No. 04-2986-CV, 2005 WL 2899866, at *1 (2d Cir. 2005)(citations omitted). Furthermore, "[t]he Connecticut Supreme Court . . . has held a trial court judgment to be final, despite a pending appeal, when the issue was the applicability of the rules of <u>res judicata</u>." <u>World Wrestling Entm't, Inc. v. THQ, Inc</u>, No. X05 CV 065002512S, 2008 WL 4307568, at *4 (Conn. Super. Aug. 29, 2008)(citing <u>Enfield Federal Savings & Loan Ass'n. v. Bissell</u>, 184 Conn. 569, 573 (1981)(other citation omitted)). Therefore, the pending appeal in <u>Sullivan III</u> does not preclude application of <u>res judicata</u> at this juncture.

The Second Circuit has laid out a three-prong test for applying the doctrine of <u>res judicata</u>: "(1) the previous actions involved final adjudication on the merits; (2) the previous actions involved the same parties . . .; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." <u>Pike v. Freeman</u>, 266 F.3d 78, 91 (2d

Cir. 2001)(citations omitted).  Sullivan III is the relevant previous action which has already

been adjudicated on the merits, and must be analyzed under this three-prong test.

As to the first prong of the test, in Sullivan III, Judge Kravitz analyzed in considerable

detail plaintiffs' claims of violations of their rights under 42 U.S.C. § 1985 and 42 U.S.C. §

1983 as alleged against twenty-one defendants and dismissed both of those claims as

against all five of the defendants involved in this suit, constituting a final adjudication on the

merits of plaintiffs' claims against defendant Hyland.  See Judge Kravitz's Ruling, 2004 WL

1179531, at *6-11, 13-15; Judge Kravitz's Reconsideration Ruling, 2007 WL 1114028.

Second, as discussed above, see Section I supra, Sullivan III involved the same plaintiffs and

five of the six defendants that are involved in this case, including defendant Hyland.[18]  As to

plaintiffs' claims of violations of their rights under 42 U.S.C. § 1983, those claims were raised

in Sullivan III, and Judge Kravitz specifically held that plaintiffs failed to state a claim for

which relief could be granted as against defendant Hyland for any violation of plaintiffs'

constitutional rights.   Judge Kravitz's Ruling, 2004 WL 1179351, at *13-15.   Plaintiffs'

Amended Civil Rights Complaint fails to allege any new facts that evidence state action by

defendant Hyland.   Therefore, plaintiffs' claims in this case as against defendant Hyland for

violations under 42 U.S.C. § 1983 meet the three-prong test in order to be barred under res

judicata, and are thereby dismissed.

The third and final requisite for the application of res judicata – whether the new

claims asserted in the instant action could have been raised in Sullivan III – is the one that

plaintiffs contest.  (See Dkt. #28, at 4).   As the Second Circuit explained in Pike:

Whether a claim that was not raised in the previous action could have been

---

[18]See note 12 supra.

raised therein, depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims. To ascertain whether two actions spring from the same "transaction" or same "claim," [a court] look[s] to whether the underlying facts are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

266 F.3d at 91 (citations omitted). Plaintiffs argue that they were unable to bring their claims for false arrest and retaliatory and malicious prosecution in <u>Sullivan III</u> because "they were not actionable at that time according to the Second Circuit and the U.S. Supreme Court." (Dkt. #28, at 4). Plaintiffs' assertion is simply incorrect. "[I]n Connecticut, a false arrest claim cannot lie when the challenged arrest was supported by probable cause." <u>Russo v. City of Bridgeport</u>, 479 F.3d 196, 203 (2d Cir.)(citation omitted), <u>cert. denied</u>, 128 S. Ct. 109 (2007). Under Connecticut law, "[p]robable cause . . . comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." <u>State v. Barton</u>, 219 Conn. 529, 548 (1991)(internal quotation marks & citations omitted). In <u>Sullivan III</u>, after careful consideration of plaintiffs' claims, Judge Kravitz found that there was sufficient truthful information in the affidavit supporting the arrest warrant application to support a finding of probable cause. <u>See</u> 487 F. Supp. 2d at 81. Therefore, the reason plaintiffs were unable to bring claims for false arrest in <u>Sullivan III</u> is due to the fact that they failed to meet their burden of proving a lack of probable cause.[19] Furthermore, plaintiffs' claim against defendant

---

[19]As to plaintiffs' claims for "retaliatory and malicious prosecution," a plaintiff bringing such claim under Connecticut law must prove that the criminal proceedings complained of have terminated in favor of the plaintiff. <u>See McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447 (1982)(multiple citations omitted). However, "in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." <u>D'Angelo v. Kirschner</u>, Nos. 06-3809-cv (L), 07-2970-cv (CON), 2008 WL 2873532, at *3 (2d Cir. July 23, 2008)(citation omitted). Judge Kravitz did not find that any State Defendants in <u>Sullivan III</u> lacked probable cause for plaintiff Philip Sullivan's arrest, nor do plaintiffs

Hyland for false arrest, abuse of process and retaliatory and malicious prosecution arise from plaintiff Philip Sullivan's arrest in 2001 – the same arrest that prompted plaintiffs' claims in Sullivan III, thereby satisfying the test for barring plaintiffs' new claims under the doctrine of res judicata.  Finally, even if plaintiffs' new claims for false arrest, abuse of process and retaliatory and malicious prosecution as against defendant Hyland were not barred by res judicata, they would be dismissed under Rule 12(b)(6) for the same reason that plaintiffs' claims against defendant Hyland were dismissed in Sullivan III – failure to state a claim upon which relief can be granted –  because defendant Hyland was not the person who arrested or prosecuted plaintiff Philip Sullivan, and because plaintiffs fail to allege sufficient facts to demonstrate any state action by defendant Hyland.  See Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006).  Therefore, plaintiffs' new claims for false arrest, abuse of process, and retaliatory and malicious prosecution as asserted against defendant Hyland are also barred under the doctrine of res judicata.[20]

### C. DEFENDANT DELISA

Plaintiffs' allegations against defendant Delisa mirror the allegations asserted against defendant Hyland.  Plaintiffs allege that defendant Delisa conspired with defendant Hyland and State Defendants to use her political connections to prosecute criminal proceedings against plaintiff Philip Sullivan with the use of fabricated evidence, thereby depriving plaintiffs of their Fourth and Fourteenth Amendment rights, and depriving plaintiff Philip Sullivan of

---

present this Court with any new evidence to reflect exculpatory facts that have become known to them since plaintiff Philip Sullivan's arrest that would indicate a lack of probable cause.

[20]Because the Court finds that plaintiffs' claims against defendant Hyland are dismissed under the doctrine of res judicata, there is no need for the Court to consider defendant Hyland's arguments as to collateral estoppel.

his First, Fourth, Fifth, Sixth and Fourteenth Amendment guarantees.  (Amended Civil Rights Complaint, Count I).  All of these claims were asserted against defendant Delisa in <u>Sullivan III</u>, but plaintiffs now add the same new claims of false arrest, abuse of process, and retaliatory and malicious prosecution against defendant Delisa as they did against defendant Hyland. (<u>See Judge Kravitz's Ruling</u>, 2004 WL 1179351, at *13-15; Amended Civil Rights Complaint, Counts II-III).

Defendant Delisa moves for dismissal because plaintiffs' Amended Civil Rights Complaint fails to state a claim on which relief may be granted due to plaintiffs' failure to allege the elements of a claim of false arrest, malicious prosecution, abuse of process, or any action under 42 U.S.C. § 1983, and because the issues presented by this case have already been fully and fairly litigated and determined against plaintiffs in <u>Sullivan III</u>; instead of arguing for dismissal on the basis of <u>res judicata</u>, defendant Delisa argues for dismissal on the basis of <u>collateral estoppel</u>.  (Dkt. #22, at 6-14; <u>Judge Kravitz's Ruling</u>, 2004 WL 1179351, at *13-15).  Defendant Delisa argues that plaintiffs' claim for false arrest also fails because it is time barred. (Dkt. #22, at 12-13).

In response, plaintiffs raise the same arguments they raised against defendant Hyland's Motion to Dismiss, <u>see</u> Section II.B <u>supra</u>.  For the same reasons as stated above, <u>see</u> Section II.B <u>supra</u>, plaintiffs are mistaken in their claims that (1) the doctrine of <u>collateral estoppel</u> is not applicable here because plaintiffs' denied attempt to amend their 2003 Complaint is currently pending before the Second Circuit, and that (2) <u>collateral estoppel</u> is not grounds for a motion to dismiss.   (Dkt. #28, at 11-14).  As Judge Kravitz previously held:

> Because <u>collateral estoppel</u> is a much narrower aspect of <u>res judicata</u>, and a
> pending appeal does not preclude the application of <u>res judicata</u>, we conclude

> that the plaintiff's pending appeal [in a prior action]. . . did not preclude the defensive application of collateral estoppel . . . [because] [t]he foregoing issues were "actually litigated and determined by a valid and final judgment, and were essential to the judgment."

Judge Kravitz's Summary Judgment Ruling, 487 F. Supp. 2d at 65 (citing LaSalla v. Doctor's Assoc., 278 Conn. 578, 587 (2006)(alterations omitted)).

Defendant Delisa argues that the assertion that she "conspired with others to cause Mr. Sullivan to be investigated and prosecuted for eavesdropping" was previously asserted by plaintiffs in Sullivan III, and that Judge Kravitz expressly held that plaintiffs failed to allege sufficient "state action" to support their claims against her for violation of 42 U.S.C. § 1983. (Dkt. #22, at 6-7; Judge Kravitz's Ruling, 2004 WL 1179351, at *13-15). Therefore, Delisa argues that plaintiffs' claims are barred by the doctrine of collateral estoppel, and their new claims for false arrest, malicious prosecution and abuse of process "do not relieve [plaintiffs] of the requirement they establish Delisa was acting 'under color of state law'." (Dkt. #22, at 7).

> Under collateral estoppel, or issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Collateral estoppel will bar the relitigation of an issue of law or fact that was raised, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim.

Wall v. Union of NA, Laborers' Int'l, 276 Fed Appx. 68, 69 (2d Cir. 2008)(citations omitted).

It is well established that in Sullivan III, plaintiffs' claims against defendant Delisa for violation of their rights under 42 U.S.C. § 1983 were dismissed for plaintiffs' failure to state a claim upon which relief could be granted. Judge Kravitz's Ruling, 2004 WL 1179351, at *13-15. Judge Kravitz found that plaintiffs' allegations with respect to another private defendant "amount[ed] to nothing more than general accusations," "without setting forth any

facts that would show that [Delisa] was a willful participant in joint activity with the State or its agents." Id. at *12 (citation omitted).  Judge Kravitz further observed that the Second Circuit "has made it clear that generalized allegations of a conspiracy such as that asserted by the Sullivans are insufficient to state a § 1983 claim against a private defendant." Id. (citation omitted).  Therefore, the issue of whether defendant Delisa acted under color of law in a conspiracy to deprive plaintiffs of their constitutional rights has been adjudicated and resolved in Sullivan III.  Plaintiffs' new claims involve adjudication of the same issues adjudicated in Sullivan III because claims of false arrest, malicious prosecution and abuse of process are all claims under § 1983 and the Fourth Amendment, and would require a finding that defendant Delisa was "a willful participant in joint activity with the State or its agents." Mitchell v. Home, 377 F. Supp. 2d 361, 369 (S.D.N.Y. 2005)(citation omitted). Accordingly, the doctrine of collateral estoppel bars plaintiffs' claims against defendant Delisa in the present action, as it is designed to protect litigants from the burden of relitigating issues, and to promote judicial economy.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326-33 (1979).

### D. STATE DEFENDANTS

Plaintiffs allege that private defendants Hyland and Delisa not only conspired with one another to accuse plaintiff Philip Sullivan with the felony of eavesdropping pursuant to Conn. Gen. Stat. § 53a-189, but that they also conspired with the four named State Defendants in this case.  (Amended Civil Rights Complaint, Count I).  Plaintiffs claim that the State Defendants' actions violated plaintiffs' constitutional rights pursuant to the First, Fourth, Fifth, Sixth and Fourteenth Amendments by conspiring with private defendants to "aid and assist them in promoting their false allegations . . . against Philip Sullivan." (Id., Count I, ¶ 4).

More specifically, plaintiffs allege that the two defendant inspectors searched plaintiffs' rented premises and possessions in the absence of a lawful warrant or plaintiffs' consent, and failed to "question the veracity and motives of [private defendants]." (Id., Count I, ¶ 6). Plaintiffs also allege that the two defendant Assistant State Attorneys in this case "failed in their duty to institute and follow proper investigative procedures before and after the arrest of Mr. Sullivan." (Id., Count I, ¶ 8a).

As previously indicated, the State Defendants include Assistant State's Attorneys Sonneman and Malone, and Inspectors Coffey and Zigmont. The four state defendants move to dismiss plaintiffs' claims against them in this case, asserting that plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel, as well as the doctrines of absolute and qualified immunity. (Dkt. #25, at 11-21).

As to defendant Sonneman, in Sullivan III, plaintiffs alleged her failure to investigate conflicting statements contained in plaintiffs' entry and detainer complaint and statements in the criminal complaint by the State against plaintiff Philip Sullivan, as well as her alleged failure to suspect that probable cause did not exist to support a search warrant to plaintiffs' dwelling, and her alleged requests for continuances in the criminal proceeding against plaintiff Sullivan. Judge Kravitz's Ruling, 2004 WL 1179351, at *6. In noting that the "Second Circuit . . . requires a court to consider whether the defendant has intertwined his [or her] exercise of authorized prosecutorial discretion with other, unauthorized conduct," Judge Kravitz in Sullivan III found that plaintiffs "do not allege any conduct by Assistant State's Attorney Sonneman that could be conceivably regarded as unauthorized," and dismissed all § 1983 claims against defendant Sonneman, in both her individual and official capacities. Id. at *7, citing Bernard v. County of Suffolk, 356 F.3d 495, 504 (2d Cir. 2004).

In this case, plaintiffs assert the same claims against defendant Sonneman and provide no additional facts in their Amended Civil Rights Complaint to support their allegations. Therefore, the three-pronged test for barring plaintiffs' claims under the doctrine of <u>res judicata</u> is met in this case,[21] and plaintiffs' claims against defendant Sonneman are dismissed.

As to defendant Malone, Judge Kravitz in <u>Sullivan III</u> concluded that "[j]oinder of Mr. Malone as a party would be futile since [p]laintiffs have failed to state an actionable claim against him." <u>Judge Kravitz's Joinder Ruling</u>, 2005 WL 465425, at *2 (citation omitted). Judge Kravitz concluded that "[p]laintiffs' claims against Mr. Malone are barred by the doctrine of absolute prosecutorial immunity" under which "prosecutors are absolutely immune from suit for claims arising from conduct 'intimately associated with the judicial phase of the criminal process.'" <u>Id.</u> at *1 (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427-30 (1976)(other citations omitted)). As State Defendants assert in their brief: "It is important that courts vigilantly apply principles of preclusion because they involve more than the rights and interests of the parties. They also serve important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions." (Dkt. #25, at 11-12, citing <u>Grieve v. Tamerin</u>, 269 F.3d 149, 154 (2d Cir. 2001)). Plaintiffs' claims are barred against defendant Malone under the doctrine of <u>res judicata</u> in light of <u>Judge Kravitz's Joinder Ruling</u>. As plaintiffs' claims against defendant Malone are identical to those claims brought and dismissed against defendant Sonneman, plaintiffs' claims against defendant Malone are also dismissed under the doctrine of <u>collateral estoppel</u>.

---

[21]As required in <u>Pike</u>, 266 F.3d at 91, <u>Sullivan III</u> involved final adjudication on the merits, <u>Sullivan III</u> involved the same parties, and the claims asserted in the instant action could have been raised in <u>Sullivan III</u> and in fact <u>were raised</u> in <u>Sullivan III</u>.

As to defendant Inspectors Coffey and Zigmont, <u>Sullivan III</u> involved claims against them in connection with several alleged conspiracies to violate plaintiffs' constitutional rights under 42 U.S.C. § 1983. Claims against the Inspectors in their official capacity were dismissed due to immunity afforded them under the Eleventh Amendment, which "has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." <u>Judge Kravitz's Ruling</u>, 2004 WL 1179351, at *9-10 (citations omitted). Subsequently, in February 2005, Judge Kravitz granted plaintiffs' request to amend their 2003 Complaint to allege § 1983 individual capacity claims against Inspectors Zigmont and Coffey. <u>Judge Kravitz's Reconsideration Ruling</u>, 2005 WL 465425, at *4. However, in late May 2007, Judge Kravitz granted summary judgment in the Inspectors' favor on all of plaintiffs' federal claims, finding that plaintiffs' claims for constitutional violations caused by the defendant Inspectors to be without merit. <u>Judge Kravitz's Summary Judgment Ruling</u>, 487 F. Supp. 2d at 73-83. With regard to plaintiffs' Fourth Amendment violation claim, Judge Kravitz held that on the basis of the undisputed facts in the record, on September 29, 2000 and January 22, 2001, the Sullivans did not "have a legitimate expectation of privacy" in Ms. Crowell's residence itself so as to assert a Fourth Amendment violation for defendant inspectors' entry of Ms. Crowell's home. <u>Id</u>. at 74-75 (multiple citations omitted). As to plaintiffs' personal property, Judge Kravitz found that the only property "seized" by the State Defendants on September 28, 2000 were the three tapes given to them by defendant Hyland, which plaintiffs had steadfastly denied belonged to them or were made by them, and therefore plaintiffs "[could] not assert that they had any legitimate expectation of privacy in the audiotapes or any basis on which to challenge the Inspector's accepting of them from Mr. Hyland." <u>Id</u>. at 76 (citation omitted). Additionally,

as to plaintiffs' allegation that the arrest warrant obtained by defendant Inspectors lacked probable cause, Judge Kravitz ruled: "An arrest pursuant to a warrant signed by a neutral judge or magistrate normally carries a presumption that it was made with probable cause." Id. at 80, quoting Garcia v. Gasparri, 193 F. Supp. 2d 445, 450 (D. Conn. 2002), and held that plaintiffs' claims had "no merit to any of them." Id. at 81. He further held that plaintiffs failed to provide any evidence of "an agreement . . . to act in concert" in order to prove a § 1983 conspiracy. Id. at 83, quoting Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). As to plaintiffs' Fifth and Fourteenth Amendment claims against defendant Inspectors, Judge Kravitz held that because neither defendant Inspector is a federal actor, the Sullivans' Fifth Amendment claims must fail, and that moreover, "the Sullivans have neither claimed that Mr. Sullivan was part of a protected class for the purposes of his equal protection claim, nor have they offered any evidence to suggest that Inspectors Zigmont or Coffey treated them any differently from any other similarly-situated individuals." Id. at 83-84. Finally, as to plaintiffs' First Amendment claim, Judge Kravitz found that, "if Mr. Sullivan could prove a causal relationship between the exercise of his First Amendment rights and his criminal investigation, arrest, or prosecution, those actions would qualify as adverse action for purposes [of] his First Amendment claim," but that the Sullivans' claim fails, however, because "there is nothing in the record, even construed in the light most favorable to the Sullivans, that demonstrates either 'improper motivation' on the part of [defendant Inspectors] or that Mr. Sullivan's exercise of his First Amendment rights 'motivated or substantially caused' [the] investigation or Mr. Sullivan's arrest." Id. at 85 (citations omitted).

Due to the fact that plaintiffs' federal constitutional claims against defendant

Inspectors were thoroughly analyzed and completely disposed of in <u>Sullivan III</u>, and because they allege no new claims and state no new facts to support their numerous constitutional claims in this action, plaintiffs' claims against defendant Inspectors are dismissed as barred by the doctrine of <u>res judicata</u>, and additionally are barred by the doctrine of <u>collateral estoppel</u> because all of these constitutional issues were "actually litigated and determined by a valid and final judgment, and were essential to the judgment." <u>LaSalla v. Doctor's Assocs., Inc.</u>, 278 Conn. 578, 587 (2006)(citation omitted).

This Court further recognizes that even if plaintiffs' three new claims in this case were not barred by <u>res judicata</u> and/or <u>collateral estoppel</u>, their claims for false arrest, malicious prosecution and abuse of process would be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs' claim for false arrest is barred for the same reasons as stated in Section II.B. <u>supra</u>. Also, under Connecticut law, the tort of malicious prosecution is the groundless institution of criminal proceedings against a plaintiff. <u>See McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447 (1982). To assert such claim, plaintiffs would have to demonstrate that "the defendant[s] acted with malice, primarily for a purpose other than that of bringing an offender to justice." <u>Lee v. Edwards</u>, 101 F.3d 805, 810 (2d Cir. 1996), quoting <u>McHale</u>, 187 Conn. at 447. Furthermore, the Connecticut Supreme Court has held that "the existence of probable cause is an absolute protection against an action for malicious prosecution." <u>Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP</u>, 281 Conn. 84, 94 (2007), citing <u>Brodrib v. Doberstein</u>, 107 Conn. 294, 296 (1928)(internal alteration omitted). Because Judge Kravitz already has found that there was probable cause to arrest plaintiff Philip Sullivan, <u>Judge Kravitz's Summary Judgment Ruling</u>, 487 F. Supp. 2d at 80-83, defendant Inspectors are protected against an action for malicious prosecution, and plaintiffs' claim is dismissed.

As to plaintiffs' claim for abuse of process, in Connecticut, "abuse of process is the misuse of process regularly issued to accomplish an unlawful ulterior purpose." <u>Shaeffer v. O.K. Tool Co.</u>, 110 Conn. 528, 532 (1930). "[T]he Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of 'a legal process . . . against another <u>primarily</u> to accomplish a purpose for which it is not designed'." <u>Doctor's Assocs., Inc. v. Weible</u>, 92 F.3d 108, 114 (2d Cir. 1996)(emphasis in original). Thus, under Connecticut law, the initiation of legal proceedings, even for an improper purpose, does not create a claim for abuse of process. <u>Id</u>. (citation omitted). Rather, "liability for abuse of process lies only when the offending party overtly misuses the process <u>once the proceeding has begun</u>." <u>Id</u>. (citation omitted)(emphasis added). Because plaintiffs assert no facts to demonstrate that defendants misused the legal process once criminal proceedings against Philip Sullivan had taken place, the Court finds that plaintiffs have failed to assert a claim  for which relief can be granted.

### E. STATE LAW CLAIMS

In addition to alleging federal claims under § 1983 against the private and State Defendants in this case, plaintiffs assert claims under Article One, Sections 7 and 9 of the Connecticut Constitution.  (Amended Civil Rights Complaint, at 1, 3).  Having dismissed all federal claims against the private and State Defendants, this Court must determine whether to exercise its discretion to assert supplemental jurisdiction over the remaining state law claims against each of these defendants.

Although 28 U.S.C. § 1367(a) "makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party," <u>Judge Kravitz's Summary Judgment Ruling</u>, 487 F.

Supp. 2d at 88, quoting <u>Kirschner v. Klemons</u>, 225 F.3d 227, 239 (2d Cir. 2000), a district court may decline to exercise its supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction", or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3-4). "In exercising its discretion with respect to retaining supplemental jurisdiction, the district court must balance several factors 'including considerations of judicial economy, convenience, and fairness to litigants.'" <u>Judge Kravitz's Summary Judgment Ruling</u>, 487 F. Supp. 2d at 89, quoting <u>Correspondent Serv. Corp. v. First Equities Corp. of Fla.</u>, 338 F.3d 119, 126 (2d Cir. 2003). Taking all factors into consideration, the Court concludes that efficiency and fairness would best be served by declining to exercise supplemental jurisdiction over the state law claims against the private and State Defendants because the remaining claims are purely state law claims befitting the expertise and experience of a state court.

### F. PLAINTIFFS' MOTION TO STAY

In their brief, plaintiffs alternatively request that the Court stay this action until the Second Circuit rules on their appeal in <u>Sullivan III</u>. (Dkt. #28, at 16). Such request is <u>denied</u>.

### III. CONCLUSION

For the reasons stated above, defendants' Motions to Dismiss (Dkts. ##21, 24, 26) are **granted** and plaintiffs' Motion to Stay (Dkt. #28) is **denied**.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of

Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**.

Dated this 21st day of November, 2008 at New Haven, Connecticut.

/s/Joan Glazer Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge