## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PHILIP SULLIVAN and CHARLOTTE
SULLIVAN,

      Plaintiffs,

v.

JAMES HYLAND, MARYANNE DELISA,
GREGORY ZIGMONT, CHARLES COFFEY,
TERRI SONNEMAN, and JOHN MALONE,

      Defendants.

3:08-cv-00471 (CSH) (JGM)

**MEMORANDUM
OF DECISION
AND
ORDER**

HAIGHT, Senior District Judge:

This case comes before the Court to review several recommended rulings by Magistrate Judge Margolis: the Recommended Ruling of November 21, 2008 [doc. #39, hereinafter "First Recommended Ruling" or "R.R.1"] on the Defendants' Motions to Dismiss [docs. ##21, 24, 26]; the Recommended Ruling of November 25, 2008 [doc. #40, hereinafter "Second Recommended Ruling" or "R.R.2"] on Defendant Hyland's Motion for Injunction [doc. #30] and the Plaintiffs Philip and Charlotte Sullivan's Motion to Strike the same [doc. #36]; and the Recommended Ruling of February 6, 2009 [doc. #55, hereinafter "Third Recommended Ruling" or "R.R.3"] on Defendant Maryanne DeLisa's Motion for Preliminary Injunction [doc. #50] and Plaintiffs' Motion to Strike the same [doc. #48].[1]

This case was originally assigned to another district judge in this judicial district, the Honorable Janet Bond Arterton, and the case was reassigned to me while the referral to Judge Margolis was pending.

---

1.    For the sake of consistency, this Memorandum of Decision also adopts the same "hereinafter" references, short forms, and abbreviations used by Judge Margolis in her First Recommended Ruling.

## I.      Introduction

### A.      Background

This case has its genesis in a domestic dispute, where plaintiffs were ejected from their home of many years after a dispute with their landlord,[2] who also happened to be plaintiff Philip Sullivan's mother.  That removal gave rise to a criminal complaint against Philip Sullivan on eavesdropping charges.   The case was dismissed after the chief witness — again, Philip Sullivan's mother — passed away, and pretrial testimony was therefore excluded under the hearsay rule.  In addition to a landlord-tenant lawsuit in Connecticut state court (*Sullivan I*) the Sullivans have brought a state probate action (*Sullivan II*) and a federal lawsuit to recover damages for perceived violations of their civil rights (*Sullivan III*).   In all those lawsuits, the Sullivans sued several family members, and in the federal action under 42 U.S.C. § 1983, they also sued private attorneys and numerous officials of the State of Connecticut, including police investigators, prosecutors, and judges, at least some of whom the Sullivans believe conspired with their family members to deprive them of their constitutional rights.

According to plaintiffs,

> [t]he current action which is labeled by the court as *Sullivan IV* . . . was brought by Plaintiffs because in Sullivan III, as appears of record, Plaintiffs were denied their due process opportunity to amend their complaint [in] September, 2005 to include said claims [for false arrest and malicious prosecution] AFTER the state criminal action was dismissed in Plaintiff Philip Sullivan's favor April 1, 2005 for total lack of evidence.

---

2.      I use the term "landlord" loosely, since an entry and detainer lawsuit brought by the Sullivans conclusively determined that the Sullivans were not, in fact, tenants at this location at any time within the legal meaning of that word.  *See* Memorandum of Decision, *Sullivan I*, 2004 WL 5354050 (Conn. Super. June 10, 2004) (dos Santos, J.), *aff'd*, 101 Conn. App. 605, 923 A.2d 760 (2007); *Judge Kravitz's Summary Judgment Opinion*, *Sullivan III*, 487 F. Supp. 2d 52, 64 (D. Conn. 2007).

Pls.' Obj'n to R.R.2, Doc. #43, at 7 (emphasis and footnote omitted).[3]

In other words, plaintiffs' purpose in the captioned action, *Sullivan IV*, is to obtain relief from *Judge Kravitz's Joinder Ruling* in *Sullivan III*, which denied them leave to reinstate certain claims and defendants and to introduce additional claims against those defendants.

### B.      Standard of Review

As required by Federal Rule of Civil Procedure 72(b)(3), where timely objections are raised to a recommended ruling by a magistrate judge on a dispositive motion, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

### C.      Prior Proceedings

This case has a long and tortured history, and the parties' familiarity with the facts and procedural posture is presumed.  After at least two actions in Connecticut state court, these same plaintiffs filed a sweeping lawsuit in this Court.  *See* Complaint, *Sullivan v. Stein* ["*Sullivan III*"], No. 3:03-cv-1203 (MRK) (filed July 10, 2003).  The decisions reached in that case form the basis of defendants' preclusion arguments in the case at bar.  *See Judge Kravitz's Ruling*, 2004 WL 1179351, 2004 U.S. Dist. LEXIS 9438 (D. Conn. May 21, 2004) (granting plaintiffs' motions to amend certain claims in their complaint; dismissing claims against the large majority of defendants on grounds of prosecutorial, judicial, or Eleventh Amendment immunity for most state defendants, and failure to state a claim under federal law against the private defendants; and

---

3.      Plaintiffs make frequent use of boldface type and italics in their briefs.  When quoting their briefs throughout this opinion, I often omit their emphases without further annotations, so as not to distract from the substance of their arguments.

declining to exercise supplemental jurisdiction over state law claims); Ruling and Order, 2004
WL 2750312 (D. Conn. Nov. 18, 2004) (denying plaintiffs' multiple Motions for
Reconsideration); *Judge Kravitz's Joinder Ruling*, 2005 WL 465425, 2005 U.S. Dist. LEXIS
2840 (D. Conn. Feb. 7, 2005) (denying leave to add defendant prosecutor John Malone because
such joinder would be futile, because claims against him would be barred on grounds of
prosecutorial immunity; denying leave to amend the complaint to revive claims against most
defendants under §§ 1983 & 1985(3), because the proposed amendments failed to cure defects
previously identified; but granting leave to amend the complaint to add claims under § 1983
against defendant inspectors Zigmont and Coffey, in their individual capacities); Ruling and
Order, 2005 WL 977069 (D. Conn. Apr. 19, 2005) (denying plaintiffs' Motions for Order of
Certification of Immediate Appeal and for Stay Pending Determination by Second Circuit);
Ruling and Order, 2005 WL 2209301 (D. Conn. Sep 12, 2005) (denying defendants Zigmont and
Coffey's renewed motion to dismiss, and permitting claims against those defendants to proceed);
Memorandum of Decision, No. 3:03-cv-1203 (MRK), Doc. #250 (D. Conn. Sept. 29, 2005)
(denying leave to reinstate claims previously dismissed against private and state defendants —
leave was sought based on dismissal and expunction of the criminal case against Philip Sullivan
and the Court's recent decision not to dismiss a limited set of claims); *Judge Kravitz's
Reconsideration Ruling*, 2007 WL 1114028 (D. Conn. Apr. 10, 2007) (denying leave to amend
and reinstate claims against private defendants, after repeated attempts to do so that were
dismissed for insufficient pleading); *Judge Kravitz's Summary Judgment Ruling*, 487 F. Supp. 2d
52 (D. Conn. May 30, 2007) (granting defendants' motions for summary judgment on all
remaining federal claims under § 1983; denying those motions as to the remaining state-law

claims; but declining to exercise supplemental jurisdiction over the remaining state-law claims and therefore dismissing them for lack of jurisdiction).

In her First Recommended Ruling [doc. #39], Judge Margolis prepared a comprehensive narrative of the factual and legal history in these matters, which I adopt as my own and incorporate by reference.  *See* R.R.1 at 3-8.[4]

### D.     Subsequent Proceedings

Since the time that Judge Margolis issued her Recommended Rulings, one other change has occurred in the procedural posture of matters related to the case at bar.  On April 3, 2009, the Second Circuit summarily affirmed Judge Kravitz's judgment in *Sullivan III*, which was based on the many opinions already cited *supra*.  The Second Circuit provided no discussion, except that it affirmed "for substantially the reasons stated by the district court in its thorough opinions. We have considered all of the Sullivans' arguments and find them to be without merit."  *Sullivan v. Stein*, No. 07-3085-cv, slip op. at 2, 2009 WL 910280 (2d Cir. Apr. 3, 2009) (unpublished summary order).

## II.     The First Recommended Ruling: Defendants' Motions To Dismiss

### A.     Standard of Review

The standard of review on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is familiar, although recent modifications by the Supreme Court have made it less permissive in some cases.[5]  A motion to dismiss under Rule 12(b)(6) must be decided on "facts

---

4.      One of the plaintiffs' objections to Judge Margolis's First Recommended Ruling is that her summary of that history is factually inaccurate.  *See* Pls.' Obj'n to R.R.1 [doc. #41] at 7-11. Because I conclude that plaintiffs' objections are without merit, *see infra*, I adopt her factual summary as my own.

5.      Judge Margolis did not mention the recent modifications to this standard, embodied by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and its progeny.  But even if she applied the previous, more permissive, standard of review, she nevertheless recommended

stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted).   In particular, because this case turns on facts that have been the subject of several prior actions, it is proper and indeed incumbent upon this Court to take judicial notice of the opinions in those prior cases. *See Chien v. Skystar Bio Pharm. Co.*, No. 3:09-CV-149 (MRK), — F. Supp. 2d —, 2009 WL 1606451, *2 n.3 (D. Conn. June 8, 2009) ("[I]n considering a *res judicata* defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court.").[6]

In deciding a motion to dismiss, well-pleaded facts must be accepted as true and considered in the light most favorable to the Plaintiff.  *Patane v. Clark,* 508 F.3d 106, 111 (2d Cir. 2007).  The issue in deciding a motion to dismiss is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims."  *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995).  The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  This requires the complaint to contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim. *Id.* at 556.   "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

dismissal of these claims.  Thus, applying a more exacting standard does not affect the result.

6.   Because this opinion has not yet been published in an official reporter, a copy of the Westlaw version will be transmitted in the copy of this Memorandum of Decision that is sent to plaintiffs, in accordance with the Second Circuit's suggestion in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).  The same will apply to all other unpublished opinions cited herein, except those that would already have been provided to plaintiffs during the course of their prior litigation (such as the numerous unpublished opinions in *Sullivan III*).

plausible on its face.  A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citing *Twombly*; internal quotation marks omitted; emphasis added).    The Court has distinguished between factual pleadings and conclusory allegations, stating that when "bare assertions . . . amount to nothing more than a formulaic recitation of the elements" of a claim, then "the allegations are conclusory and not entitled to be assumed true." *Id.* at 1951 (citing *Twombly*; internal quotation marks omitted).

### B.      Plaintiffs' Factual Objections

Plaintiffs identify the following alleged "misstatements of facts as to various court decisions," which they claim "lack any sense of fundamental fairness or a fair hearing and are prejudicial to Plaintiffs . . . ."  Pls.' Obj'n to R.R.1 at 7.

**Item A.**   The first of these alleged "misstatements" is that the Recommended Ruling "perhaps unknowingly mis-states the nomenclature of Plaintiffs' state entry & detainer action . . . ."  *Id.*  Apparently, plaintiffs quibble with the fact that Judge Margolis included a citation to a state court opinion regarding an application for a prejudgment remedy, 2002 WL 523076 (Conn. Super. Jan. 10, 2002) (Crawford, J.), which was affirmed on an interlocutory appeal, 74 Conn. App. 902, 814 A.2d 441 (Dec. 31, 2002), rather than the final Memorandum of Decision on the merits after a bench trial, 2004 WL 5354050 (Conn. Super. June 10, 2004) (dos Santos, J.), which was affirmed on final appeal by the Appellate Court, 101 Conn. App. 605, 923 A.2d 760 (June 5, 2007).  Because Judge Margolis explicitly based her factual summary on the Appellate Court's opinion on final appeal, it is clear her citation to the non-final opinion was provided for the reader's convenience, and this objection is without merit.  Plaintiffs also claim that in its final (2007) decision, upon which the Recommended Ruling relies, the Connecticut Appellate Court

misstated the date of decision for one of the opinions below.  Pls.' Obj'n to R.R.1 at 8.

Regardless of whether plaintiffs are correct in that assertion,[7] the fact is wholly immaterial to the

facts and chronology upon which Judge Margolis relied in her Recommended Ruling.  That

objection, too, is without merit.

Item B.  Similarly, plaintiffs object that Judge Margolis "mis-states and attributes to

Judge Sheldon" a certain recitation of facts:[8]

> *Nowhere* in Judge Sheldon's ruling, including at ID*2, does he
> make the above statements, presumably because they are LIES
> promoting and fabricating FALSE evidence. . . . The misstatement
> from the recommended ruling is a Continuation of the *cumulative
> misrepresentations of facts* which these Plaintiffs have been
> subjected to over the past eight years.

Pls.' Obj'n to R.R.1 at 8.  In fact, as Defendant Hyland's memorandum points out, Judge

Margolis was simply paraphrasing Judge Sheldon's ruling in the criminal matter against Philip

Sullivan.  This objection has no merit.

Item C.  Plaintiffs object to Judge Margolis's citation to a 2007 opinion when describing

an event that was the subject of a ruling in 2005, "[r]aising the question why the magistrate did

not seek out the district court's Sept 29, 2005 ruling . . . as it rushed to do with others?"  Pls.'

Obj'n to R.R.1 at 9.  This objection does not even offer a genuine factual challenge.  It is without

merit.

Item D.  This item raises a legal argument addressed elsewhere, namely, whether or not

the plaintiffs' claims for false arrest were available prior to the dismissal of the criminal matter

---

7.    Defendant Hyland offers a convincing explanation: the court was simply referring to a later decision that incorporated the earlier one.  *See* Def. Hyland's Mem. [doc. #44] at 4-5.

8.    Judge Sheldon was the Connecticut Superior Court judge in the criminal action against Philip Sullivan.  It was his decision to dismiss that case after the chief witness, Philip Sullivan's mother, passed away.

against Philip Sullivan, and if not, whether that fact would resuscitate claims against certain defendants that had already been dismissed prior to the termination of the criminal matter. Because this argument is legal, and not factual, I address it later.

**Item F** [*sic*]**.**  This item raises another legal argument: plaintiffs disagree with Judge Margolis's assessment that their abuse-of-process claim fails, independent of preclusion arguments, because plaintiffs have not pleaded how defendants misused legal process.  Perhaps in an effort to remedy any such deficiency, they also recapitulate certain facts from their pleadings.  Because this argument is not factual in nature, it is also addressed below.

### C.    Plaintiffs' Legal Objections

Aside from their factual objections, described above, plaintiffs lodge several objections against the legal reasoning in Judge Margolis's First Recommended Ruling.  The bulk of that ruling held that all of plaintiffs' claims must be dismissed as precluded by claim or issue preclusion.  Judge Margolis also held that apart from any preclusion that might apply, certain claims would fail as a matter of law, for insufficient pleading.[9]  Those deficiencies in pleading might theoretically be curable in an amended pleading.  But plaintiffs' preclusion bar cannot be cured, because every single federal claim in this suit *could have been raised* in *Sullivan III*. Therefore, I rest my holding in this case on preclusion.

### 1.    Federal Claims Under § 1983

As I discuss in greater detail below, plaintiffs hope to escape the preclusive effect of their previous lawsuit in *Sullivan III* by arguing that this case brings new, different claims from those

---

9.      See, for example, Judge Margolis's discussion of the shortcomings in plaintiffs' claim for abuse of process, in R.R.1 at 25-26.  That is the analysis to which plaintiffs have objected in their "Item F," *supra*.  I ultimately decline to adopt this portion of Judge Margolis's First Recommended Ruling in Part II.C.6., *infra*.

raised previously.[10]   *See* Pls.' Obj'n to R.R.1 at 2 ("Sullivan III ***did not allege*** false arrest, retaliatory malicious prosecution or abuse of process in the absence of probable cause. . . . Plaintiffs' . . . motion to include said defendants and claims ***was denied*** . . . ." (footnote omitted)); *id.* at 5-7 (arguing again that *Sullivan III* "did not include claims of false arrest, retaliatory malicious prosecution and abuse of process," and repeatedly stating that *Sullivan III* was not based "on the same claims brought to this court").

But even if I assumed for the purposes of argument that plaintiffs have brought *some* new claims that were not, and could not, have been brought in *Sullivan III*, that still would not prevent dismissal of this lawsuit, because all of the plaintiffs' underlying *federal* claims are ones which either were brought or could have been brought in their previous action.  Moreover, they have not cured — indeed, it would seem that they cannot cure — the deficiency that led to the dismissal of the same claims in *Sullivan III*.  Given that shortcoming, I see no reason to exercise federal jurisdiction over a case where all of the federal claims must be dismissed as being precluded.[11]

---

10.     At least, that is the strongest interpretation for many parts of plaintiff's opposition, which sometimes reads like an examination in logic:

> ***IF*** there is ***no prior judgment from a court of competent jurisdiction <u>on the claims before this court</u>***, which there is not, THEN Defendants Hyland Delisa cannot be dismissed from this action grounded on their not having acted "*under color of law*" with state Defendants and Defendant Sonneman cannot be dismissed grounded on "prosecutorial immunity".

Pls.' Obj'n to R.R.1 at 6-7.

11.     Judge Kravitz dismissed most of the federal claims at a preliminary stage in *Sullivan III*. After discovery, he adjudicated the remaining federal claims in favor of the defendants, and he declined to exercise supplemental jurisdiction over the state law claims.  His reasons for doing so would apply with equal force here, which is why I first examine whether plaintiffs have stated any federal claims that can survive dismissal.

The only *federal* causes of action asserted in this complaint, against any defendant, are for damages stemming from violations of the plaintiffs' constitutional rights, under 42 U.S.C. § 1983. In *Sullivan III*, the complaints alleged at various times § 1983 violations of rights under a broad range of theories and constitutional amendments. While the primary thrust of plaintiffs' *pro se* complaint was to allege violations of equal protection and due process, the *Sullivan III* complaint also alleged, *inter alia*, violations of the right against self incrimination, warrantless searches in violation of the Fourth Amendment, and encroachments upon free speech in violation of the First Amendment. *See, e.g.*, Second Am. Compl., *Sullivan III*, Doc. #173, at 15 (filed Dec. 8, 2004) (allegations against defendant Maryanne Delisa); *id.* at 43, Doc. #173-2 at 16 (allegations against defendant Gregory Zigmont); *id.* at 47, Doc. #173-2 at 20 (allegations against defendant Charles Coffey); *id.* at 51, Doc. #173-2 at 24 (allegations against defendant James Hyland); *id.* at 54, Doc. #173-3 at 1 (allegations against defendant Terri Sonneman); Motion To Bring In An Additional Defendant, *Sullivan III*, Doc. #189 (Dec. 27, 2004) (attempting to join John Malone as a defendant in his individual and official capacities, and proposing an amended set of claims against him in particular).

Plaintiffs believe that their current Complaint states "claims of a Section 1983 conspiracy for false arrest, retaliatory malicious prosecution and abuse of process." Pls.' Obj'n to R.R.1 at 1-2. They are correct that 42 U.S.C. § 1988 specifies that actions brought under § 1983 are decided by reference to state common law in the absence of an applicable federal standard. *See Conway v. Village of Mount Kisco, N.Y.,* 750 F.2d 205, 215 (2d Cir. 1984) (applying state standards for malicious prosecution); *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995) (applying state standards for false arrest); *see also Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 317 (D.

Conn. 2009).  This interplay has led the Second Circuit to state that claims for false arrest or malicious prosecution are "substantially the same" as claims under § 1983 for violations of the Fourth and Fourteenth Amendments.  *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

But even though plaintiffs highlight the differences between the new claims in this action and those before Judge Kravitz, the foundation upon which this "new" action is built is identical to that in *Sullivan III*: both actions allege claims by the same plaintiffs, against the same defendants, arising from the same sequence of events, for damages under § 1983, for an infringement of an assortment of federal constitutional rights.  The fact that different state-law labels have been applied to these claims changes nothing.

## 2.    Legal Standard for Preclusion of Federal Claims

The Second Circuit has spoken extensively on the requirements of *res judicata*, summarizing its own precedents and those of the Supreme Court.

> Under the doctrine of *res judicata,* or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.  Thus, the doctrine bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.
>
> *Res judicata* is a rule of fundamental repose important for both the litigants and for society.  It relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication.

*EDP Medical Computer Systems, Inc. v. U.S.*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks, citations, and brackets omitted; emphasis added); *see also Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (articulating the same test for *res judicata*).  Of the claims that were dismissed in plaintiffs' previous federal lawsuit, some were

dismissed at the motion to dismiss stage, others on a motion for summary judgment, and still others were preemptively denied on motions to amend the complaint or to join new defendants. However, the stage of dismissal is irrelevant.  *See, e.g.*, *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Northern Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000) (some denials of leave to amend are on the merits, but even where not, denial may "signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit," because the claims *could* have been brought earlier).

Similarly, for collateral estoppel, or issue preclusion,

> [t]he fundamental notion . . . is that an *issue* of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.  Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits.

*Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotation marks and citations omitted; emphasis added).

Finally, even though *res judicata* and collateral estoppel "are affirmative defenses," *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999), they may still be raised on a motion to dismiss under Rule 12(b)(6).

> Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.

*Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000); *see also* R.R.1 at 14 (collecting other cases). That is precisely the case here.

Although she used a formulation that enumerates these elements in a slightly different fashion, Judge Margolis applied these tests correctly.[12] She recommended dismissing all claims against defendant Hyland on the grounds of *res judicata*, because they were or could have been raised in *Sullivan III*. *See* R.R.1 at 14-17. Furthermore, although she did not specifically entertain a collateral estoppel analysis in defendant Hyland's case, *see* R.R.1 at 17 n.20, Judge Margolis explicitly held that these claims fall "for the same reason" that they were dismissed in *Sullivan III* — "plaintiffs fail to allege sufficient facts to demonstrate any state action by defendant Hyland." R.R.1 at 17. For private defendants, this requires a finding that the defendant's actions could be fairly attributed to the state.[13] Because that issue was identical to one previously decided by Judge Kravitz, after a full and fair opportunity for litigation, and it was actually decided and essential for the final determination on the merits of the claim against

---

12.    Judge Margolis's formula did not inquire whether this Court was a "court of competent jurisdiction." There can be no question that it was, and is, within its jurisdiction to adjudicate these plaintiffs' claims under § 1983. To the extent their objection challenges this prong, *see, e.g.*, Pls.' Obj'n to R.R.1 at 5 ("There exists no prior final judgment by any court of competent jurisdiction as to probable cause for the overall ongoing Section 1983 combined conspiratorial conduct of Defendants . . . ."), that objection is not supported with either fact or legal argument in plaintiffs' briefs. It is, therefore, wholly without merit.

13.    Determining whether a private individual was acting "under color of state law" for the purposes of § 1983 — and the corollary inquiry of whether there is sufficient "state action" to satisfy the Fourteenth Amendment — is an area of law that is fraught with complexity and nuance. The Supreme Court has listed a wide variety of factors suggesting whether behavior can be "fairly attributed" to the state. *See Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295-296 (2001) (listing such factors); *see also Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941 (1982); *Dennis v. Sparks*, 449 U.S. 24 (1980). Judge Kravitz took all of these factors into consideration, and furthermore afforded plaintiffs wide latitude as *pro se* parties, construing their complaint liberally to consider whether it sufficiently alleged a § 1983 conspiracy theory. *See Judge Kravitz's Ruling*, 2004 WL 1179351 at *11-12. He concluded that it did not. *See id.* at *13, *15.

defendant Hyland, all claims under § 1983 against defendant Hyland are barred by collateral estoppel.  Judge Margolis applied an identical analysis to defendant Delisa.  *See* R.R.1 at 17-20. Similarly, Judge Margolis recommended dismissing claims against defendant Delisa because claims under § 1983 require state action.  Judge Margolis recommended dismissing all claims against defendants Sonneman on the grounds of *res judicata*, because plaintiffs asserted the same claims against her as in their *Sullivan III*, but provided no additional facts to suggest a different outcome.  *See* R.R.1 at 21-22.  Judge Margolis recommended dismissing all claims against defendant Malone on the grounds of *res judicata*, because Judge Kravitz rejected an attempt to add those same claims, holding them barred as a matter of law by the doctrine of prosecutorial immunity.  Judge Margolis also recommended dismissing claims against defendant Malone because the factual allegations against Malone were identical to those against Sonneman, and therefore the necessary elements which had been decided in Sonneman's favor would necessarily be decided in Malone's favor as well, therefore excluding those claims by operation of collateral estoppel.  *See id.* at 22.  Finally, Judge Margolis recommended dismissing all claims against defendants Zigmont and Coffey in their individual capacities on the grounds of *res judicata* and collateral estoppel, because in *Judge Kravitz's Summary Judgment Ruling*, he determined several critical issues in favor of those defendants.  Claims against these defendants "were thoroughly analyzed and completely disposed of in *Sullivan III*, and because they allege no new claims and state no new facts to support their numerous constitutional claims in this action,"  the claims against Zigmont and Coffey must be dismissed on grounds of both *res judicata* and collateral estoppel.  *Id.* at 25.

Judge Margolis also correctly stated the principles motivating issue and claim preclusion: "It is important that courts vigilantly apply principles of preclusion because they involve more than the rights and interests of the parties.  They also serve the important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions."  R.R.1 at 22 (quotation marks omitted).

Because her application of these legal principles was correct, I will not elaborate further on that application, except insofar as it is required to address the specific objections made by plaintiffs.

I turn to those objections now.

### 3.      Plaintiffs Do Not Dispute That Identical Claims Should Be Dismissed

To begin, I note the State of Connecticut's argument that "[a]s a threshold matter, the plaintiffs raise no objection to the Magistrate Judge's ruling to the extent it recommended dismissal of all the claims the plaintiffs made in *Sullivan III*. . . . Thus, the plaintiffs have waived any objection to the dismissal of those claims."   State Defs.' Resp. [doc. #45] at 5 (citing the local rules of this federal district court — specifically, D. Conn. Local R. Civ. P. 72.2, which provides that parties objecting to a recommended ruling must "specifically identify the ruling . . . or part thereof to which objection is made and the factual and legal basis for such objection"). The Sullivans do not appear to contest this argument in their Reply.  Moreover, I agree with Judge Margolis's conclusion that many claims in this suit are duplicative of those in *Sullivan III*, and at least with respect to those claims, the plaintiffs have not advanced a single convincing reason why those claims are not precluded by the prior suit.

Therefore, to whatever extent any of the claims in this lawsuit are the same ones raised in *Sullivan III*, they *must* be dismissed under the doctrine of claim preclusion.

### 4.       Opportunity To Litigate

In the Second Circuit, "*[r]es judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim." *EDP Med. Computer Sys. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007).

The briefs filed by plaintiffs clearly demonstrate their strongly held belief that the claims in this matter are different from those raised in *Sullivan III*. *See, e.g.*, Pls.' Reply re. R.R.1 [doc. #47] at 1 ("Sullivan III . . . ***did not include claims*** for damages as a result of false arrest, malicious prosecution or abuse of process because Plaintiffs research was clear that said claims ***were not actionable*** until ***AFTER*** termination of the state criminal action . . . ."). Indeed, on their own, plaintiffs describe the purpose of this action as to vindicate precisely those claims that Judge Kravitz would not permit them to introduce into *Sullivan III*. *See* Pls.' Obj'n to R.R.2 [doc. #43] at 7.

Reading the plaintiffs' briefs in the light most favorable to them, and affording them the latitude given to *pro se* parties, plaintiffs appear to believe that in *Sullivan III*, they were denied an opportunity to litigate in two respects. First, they believe their "new" claims for false arrest, abuse of process, and malicious prosecution *could not have been raised* in *Sullivan III*. Second, they appear to believe that *even if* they could have raised those claims, they were not presented with a "full and fair opportunity" to do so.

Stated more completely, their argument would be as follows: In order to prove some of their federal constitutional claims, Judge Kravitz would have looked to the elements of similar claims under state law. Because state law claims for false arrest, malicious prosecution, and abuse of process require a criminal action to have been dismissed in the defendant's favor, those

claims could not have succeeded prior to the dismissal of the state criminal action. Therefore, (1) until the state criminal charges were dismissed, those claims "could" not have been raised for *res judicata* purposes. Furthermore, (2) because Judge Kravitz did not permit them to add these claims after the criminal action was dismissed in Philip Sullivan's favor, plaintiffs did not have a "full and fair opportunity" to litigate these claims. I address these arguments in turn.

### i. Availability of Claims for False Arrest, Abuse of Process, and Malicious Prosecution

It is clearly the case that claims for false arrest, abuse of process, and malicious prosecution *could* have been *raised* in *Sullivan III*, even though Judge Kravitz's analysis makes it clear that such claims ultimately would not have succeeded. We know this because plaintiffs' § 1983 claims were dismissed for reasons *other than* the plaintiffs' inability to demonstrate that a criminal action had terminated in their favor.

Specifically, as we have already noted, the claims against the private defendants were dismissed for failure to allege "state action" sufficient under § 1983. Claims against defendants Sonneman or Malone were dismissed or preemptively rejected, respectively, because among other reasons, plaintiffs could not defeat the doctrine of prosecutorial immunity as a matter of law. Finally, claims against defendant investigators Zigmont and Coffey in their individual capacities were adjudicated in favor of those defendants after discovery. The Court granted those defendants' motion for summary judgment on the basis of several determinations, none of which concerned the timing of state criminal dismissal, and many of which would apply to claims under § 1983 for false arrest, abuse of process, or malicious prosecution.[14]

---

14. Judge Kravitz considered claims made by plaintiffs that warrants issued in January and April, 2001, were invalid and therefore did not provide probable cause for a search of the premises or for Mr. Sullivan's arrest. "Utilizing the corrected affidavits doctrine and adding all of the allegedly exculpatory information that the Sullivans wanted added, the Court nonetheless

### ii.      Fullness and Fairness of the Opportunity to Litigate

Plaintiffs also argue more generally that preclusion "is inapplicable . . . because Plaintiffs have never had a full and fair opportunity to litigate their claims of a 1983 conspiracy grounded on false arrest, retaliatory malicious prosecution and abuse of process in the absence of probable cause as alleged in this action . . . ."  Pls.' Obj'n to R.R.1 at 4-5.

But plaintiffs cite not one single fact to support that proposition.  Instead, they cite four cases where collateral estoppel did not apply, without discussion.  *Id.* at 5.  Those cases are easily distinguished.[15]

Even reading plaintiffs' arguments so as to present the strongest arguments they suggest, there are only two allegations that could possibly support their charge that *Sullivan III* was not a full and fair opportunity to litigate.

---

concludes that there was sufficient truthful information in the affidavit to support a finding of probable cause."  487 F. Supp. 2d at 81.

As the state correctly notes in its brief, "these holdings were fully litigated and necessary to support the district court's final judgment. . . .  That is fatal to the plaintiffs' federal and state claims of malicious prosecution and false arrest."  State Defs.' Resp. to R.R.1 [doc. #45] at 7.

Similarly, claims under the First Amendment were dismissed because "nothing in the record, even construed in the light most favorable to the Sullivans," demonstrated that defendant Zigmont's arrest of Philip Sullivan was improperly motivated or caused by Mr. Sullivan's exercise of his First Amendment rights.  487 F. Supp. 2d at 85.

15.      For example, in *Golino v. City of New Haven*, a plaintiff was not collaterally estopped from litigating a question of probable cause because he had been prohibited from presenting evidence at state court hearing and no access to police investigative file which contained exculpatory information, among other deficiencies.  The Second Circuit held those "procedural limitations [] curtailed Golino's efforts to secure the full and fair litigation of the probable cause issue."  950 F.2d 864, 869 (2d Cir. 1991).  The distinction is manifest.  Golino was denied an opportunity to examine and present exculpatory evidence.  Here, the plaintiffs were denied the opportunity to reinstate claims that the Court had already determined would fail as a matter of law, after countless failed attempts to improve those claims.  Other cases cited by plaintiffs are similarly distinguished.

The first possible argument that "in Sullivan III, Plaintiffs' were denied the due process opportunity to amend their complaint to include said defendants and said claims." Pls.' Obj'n to R.R.1 at 4. They point specifically to Judge Kravitz's denial of their September 26, 2005 motion, which sought reconsideration of the Court's previous dismissal of certain defendants and claims, for failure to state a claim upon which relief can be granted. But contrary to plaintiffs' suggestion, Judge Kravitz's denial was eminently fair, because it came only after plaintiffs had repeatedly neglected several opportunities to cure defects in their complaint.[16]

In fact, Judge Kravitz's opinions themselves argue against plaintiffs' claims that they were denied "due process." In those opinions, Judge Kravitz repeatedly remarked that plaintiffs explicitly *denied* that they were raising a claim for malicious prosecution.[17] If this denial was the

---

[16]    The history of these amendments and subsequent motions for reconsideration is retold in painstaking detail in the Memorandum of Decision in *Sullivan III* filed September 29, 2005 [doc. #250]. In short, after two amended complaints, claims against many defendants (including most private defendants) were dismissed without prejudice to amendment; after reconsideration and amendments, the defendants were dismissed again, this time with prejudice. Thereafter, plaintiffs filed the motion to add these additional claims against the already-dismissed defendants. Judge Kravitz found "no reason to permit Plaintiffs to reassert claims" which he had "several times rejected." *Id.* at 4.

[17]    *See, e.g.*, Ruling and Order, *Sullivan III*, 2005 WL 2209301, [doc. #246] (Sept. 12, 2005) ("Defendants noted that Plaintiffs' allegations could be read to state a malicious prosecution claim based on Defendants' investigation and arrest of Mr. Sullivan. However, in their Objection to State's Renewed Motion to Dismiss, Plaintiffs expressly stated that they do not bring such a claim. Therefore the Court does not address Defendants' malicious prosecution arguments." (citations omitted)); *Judge Kravitz's Summary Judgment Ruling*, *Sullivan III*, 487 F. Supp. 2d at 73 n.18 (May 30, 2007) ("[T]he Sullivans expressly denied . . . that they are asserting any claim of malicious prosecution. Furthermore, the Sullivans did not request permission to add a malicious prosecution claim when they sought to amend their complaint for the fourth time. Because the Sullivans have not asserted a malicious prosecution claim and have expressly disclaimed any interest in doing so, the Court will not address malicious prosecution as an independent basis for recovery." (citations omitted)).

Far from demonstrating that plaintiffs were denied a full and fair opportunity to litigate, these citations actually demonstrate two facts: first, that plaintiffs clearly *could* have raised these claims, and second, *just how easy* it would have been for plaintiffs to do so.

product of plaintiffs' misunderstanding regarding the applicable legal standards at that time,[18] it does not follow that they were denied a "full and fair opportunity" to present those claims. To borrow a phrase from the Second Circuit's conclusion in *EDP Medical*: faced with this apple, plaintiffs kept their mouths closed; they cannot now take a bite. *See* 480 F.3d at 627.

The second possible argument is that plaintiffs were denied a "full and fair opportunity" to litigate when Judge Kravitz threatened sanctions for further attempts to reintroduce those claims and defendants. *See* Pls.' Reply Mem. [doc. #47] at 1-2. In the same 2005 opinion, Judge Kravitz wrote: "**The Court will not look favorably upon any future attempt to resurrect already-dismissed claims and already-dismissed defendants and may impose sanctions if Plaintiffs persist in seeking to do so**." Memorandum of Decision [doc. 250] at 4, *Sullivan III* (Sept. 29, 2005).

The argument that the threat of sanctions somehow denied plaintiffs a full and fair opportunity to litigate has no merit. The Court threatened sanctions because plaintiffs simply refused to concede that some of their claims were destined to fail as a matter of law. Attempting to reintroduce such claims only served to waste the time and resources of other litigants and of the court, and it only served to abuse the judicial process.

---

18.      *See* Pls.' Reply to R.R.1 at 1 ("Plaintiffs research was clear that said claims were not actionable until AFTER termination of the state criminal action pretrial in favor of Mr. Sullivan and that did not occur until April 1, 2005."). Plaintiffs return to this argument again and again, relying on well-established rule of preclusion that "while a previous judgment may preclude litigation of claims that arose prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *St. Pierre v. Dyer,* 208 F.3d 394, 400 (2d Cir. 2000) (internal quotation marks omitted; quoting *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 328 (1955)). What plaintiffs fail to appreciate is that being able to satisfy one particular element of a claim — such as the dismissal of the criminal action in Philip Sullivan's favor — does not bring a new claim into "existence" if another element — state action by the private defendants — can never be satisfied regardless.

5.      **Statute of Limitations**

The State argues in its brief that plaintiffs' claims under § 1983 can also be dismissed under the statute of limitations. State Defs.' Resp. [doc. #45] at 11-12. The State is correct that constitutional violations under § 1983 must be brought within Connecticut's statute of limitations for tort claims. *See, e.g.*, *Walker v. Jastremski*, 430 F.3d 560, 561 (2d Cir. 2005) (citing Conn. Gen. Stat. § 52-577). These arguments may very well have merit, but I decline to rule on them, because I find the federal claims in this case to be completely precluded in any event.

6.      **State-law Claims**

The Sullivans appear to request that this Court exercise its supplemental jurisdiction over state law claims. No federal claims survive, and I decline to exercise supplemental jurisdiction over state claims. In that circumstance, this Court should not express an opinion with respect to the merits of state law claims, and accordingly I do not accept those portions of the First Recommended Ruling that hold plaintiffs' state law claims are deficient on their merits.

**III.    The Second and Third Recommended Rulings: Motions for an Injunction Against Future Litigation**

Last October, defendant Hyland filed a motion for an injunction against plaintiffs filing "any action in any federal or state court" against himself "or against Kathryn Hyland, Martin Crowell, Jeffrey Stein, Edward McAnaney (together, the 'Hylands')." [Doc. #30] at 1. Plaintiffs moved to strike that motion. [Doc. #36]. Judge Margolis recommended granting defendant Hyland's motion in part, and denying plaintiffs' motion to strike, in her Second Recommended Ruling, dated November 25, 2008. Specifically, Judge Margolis recommended enjoining plaintiffs "from instituting any new action, in state or federal court, based on the claims and defendants involved in *Sullivan I*, *Sullivan II*, *Sullivan III*, or this present suit, *Sullivan IV*."

R.R.2 at 7.  Additionally, Judge Margolis ordered plaintiffs "to attach to their complaint or other initial pleading in any future litigation, <u>on any subject</u>, a copy of this Order."  *Id.*

In December, defendant Delisa adopted the same motion, and also moved separately for a similar injunction against plaintiffs' commencing future lawsuits "against her or her husband." [Doc. #50].   Plaintiffs moved to strike her motion as well, [doc. #48], and in her Third Recommended Ruling [doc. #55], Judge Margolis recommended granting defendant Delisa's motion and denying the plaintiffs' motion to strike, in identical terms to her Second Recommended Ruling.  *See* R.R.3 at 3-4.

### A.     Standard of Review

Judge Margolis correctly stated the standard of review when assessing a party's request for an injunction against future litigation.   That standard, set forth in a line of cases including *Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986), and *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984), requires the Court to consider a number of factors in a balancing test:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State Dept. of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir. 1986)).

### B.    Discussion

Plaintiffs' primary objection to the motions for injunctions concern the standard applied and the denial of an in-person hearing on those motions.  *See* Pls.' Obj'n to R.R.2 [doc. #43] at 4-8, 9-11; Pls.' Obj'n to R.R.3 [doc. # 56] at 5-10, 9-12.[19]

In particular, plaintiffs argue that their prior litigation was not frivolous, they have no history of vexatious or harassing litigation, that they are not repeat filers, and that they had an objective, good-faith expectation of prevailing.

I agree with Judge Margolis's Second Recommended Ruling on all these factors.  *See* R.R.2 at 5-6.  I supplement that ruling only to note two aspects of particular concern.

First, plaintiffs filed their present lawsuit, *Sullivan IV,* after being explicitly prohibited from adding those claims in *Sullivan III*, and after being explicitly warned by Judge Kravitz that "**[t]he Court will not look favorably upon any future attempt to resurrect already-dismissed claims and already-dismissed defendants and may impose sanctions if Plaintiffs persist in seeking to do so**."  Memorandum of Decision [doc. 250] at 4, *Sullivan III* (Sept. 29, 2005) (emphasis in original).  *Sullivan IV* seeks to do precisely what this Court prohibited in *Sullivan III*: resurrecting already-dismissed claims against already-dismissed defendants.  Because of that fact, *Sullivan IV* clearly deserves to be designated as "vexatious."  I agree with Judge Margolis that the raw number of lawsuits is not determinative of whether an injunction against future

---

19.        In their briefs objecting to the Second and Third Recommended Rulings, plaintiffs repeatedly cite cases and quote excerpts from treatises to make an additional argument that Judge Margolis failed to comply with the requirements of Federal Rule of Civil Procedure 65(a) and 65(c).  Pls.' Obj'n to R.R.2 at 4-5; Obj'n to R.R.3 at 6-7.  Their confusion is understandable, but those rule provisions do not apply in this case; they apply only to *preliminary* injunctions or temporary restraining orders.  The injunction sought by defendants, and approved by Judge Margolis, are permanent injunctions that will only enter upon this Court's approval of Judge Margolis's Second and Third Recommended Rulings.

litigation should issue.   Rather, the question is whether plaintiffs' history of litigation demonstrates a propensity to file *duplicative* actions.   *See* R.R.2 at 5.   There can be no question that this action is highly duplicative of the last.

Second, there is strong evidence to suggest that plaintiffs do not intend for it to be the last of its kind.   I read the plaintiffs' submissions to the Court over the course of this action in the same way as Judge Margolis — to suggest that plaintiffs will not stop litigating their claims until they find a judge who agrees with them.   *See* R.R.2 at 6.   This conclusion is only strengthened by the briefs filed by plaintiffs in objection to the recommended rulings.   Plaintiffs appear to honestly believe that they "have never had a full and fair hearing or trial in any court they have been before [—] other than Judge Sheldon" (who has been the only judge to issue a ruling favorable to plaintiffs).   Pls.' Reply to R.R.1 [doc. #47] at 9.

Combining these observations with the discussion in the Second Recommended Ruling, I hold that Judge Margolis properly considered the five-factor balancing test prescribed by the Second Circuit, and that she properly arrived at the conclusion that an injunction against future litigation would be appropriate in this case.

Furthermore, the cases cited by Judge Margolis specifically contemplate an injunction against litigation in state courts, at least to the limited extent necessary to protect federal litigants from vexatious litigation that serves to suppress their access to judicial remedies in all judicial fora.   In *In re Martin-Trigona*, the Second Circuit explained the circumstances in which federal jurisdiction will extend to prevent vexatious litigation in state courts:

> [T]he protection of federal jurisdiction does not necessarily require
> extension of each provision of the injunction to actions brought in
> state courts. . . .   Abuse of state judicial processes is not *per se* a

threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests. . . .

It does not follow, however, that some qualifications relating to the protection of federal interests may not be placed upon [a vexatious litigant's] resort to state courts. First, while comity usually requires us to abstain from intrusion into state proceedings, a spirit of cooperative federalism calls upon us to alert state courts to [the litigant's] past activities so they may take judicial notice of matters relevant to new litigation brought by him. . . .

Second, protection of our jurisdiction requires that we shield federal litigants, their counsel, court personnel, their families and professional associates from [the litigant's] vexatious litigation in all courts, state or federal. . . . On remand, the district court should fashion an injunction prohibiting Martin-Trigona from bringing new actions in any tribunal without leave from the district court against persons who have encountered him in any capacity in litigation in the District of Connecticut or in this court, including, but not necessarily limited to, court personnel, counsel, and the families and professional associates of such persons.

*Id.* at 1262-63.[20]

Apart from their objections to Judge Margolis's application of the standard to issue an injunction against litigation, plaintiffs also argue that they were not given a proper opportunity to be heard on the motion for an injunction because they were not afforded oral argument.

This argument, too, has no merit. The clear rule in the Second Circuit is that "[m]otions may be decided wholly on the papers, and usually are." *World Brilliance Corp. v. Bethlehem*

---

20. The Second Circuit also added a safety valve, which was to "explicitly exempt complaints by Martin-Trigona or anyone acting in his behalf under" the statutory provision that "relates to complaints of judicial misconduct." There had been no finding that Martin-Trigona had abused that particular cause of action, and the Second Circuit also observed that proceedings under that statute do not affect other litigants. Thus, because the purpose of the statutory remedies relating to judicial misconduct is "to impose a form of monitoring upon the judiciary itself, . . . enjoining resort to [that statute] can be justified only by a finding of abuse impairing the administration of justice." *Id.* While plaintiffs' behavior in these cases comes close to "abuse impairing the administration of justice," they have not yet abused the specific protections afforded by 28 U.S.C. ch. 16, §§ 351 *et seq.*

*Steel Co.*, 342 F.2d 362, 366 (2d Cir. 1965); *see also McCall v. City of Danbury*, 16 Fed. Appx. 77, 2001 WL 964219, *2 (2d Cir. Aug. 21, 2001) (citing *World Brilliance* and collecting cases standing for the proposition that "the 'hearing' requirements of Rule 12 and Rule 56 do not mean that an oral hearing is necessary, but only require that a party be given the opportunity to present its views to the court").  In her recommended rulings, Judge Margolis addressed the arguments in plaintiffs' briefs, showing both that plaintiffs had an opportunity to be heard, and that plaintiffs actually were heard.

Plaintiffs also object that the defendants seeking these injunctions — Hyland and Delisa — do not have Article III standing to seek injunctions against the filing of lawsuits against the other defendants in this matter.  *See* Pls.' Obj'n to R.R.3 [doc. #56] at 10-12.  This argument, too, fails.  As parties who continue to accrue attorneys' fees in defending against this litigation, it is clear that all the defendants in this action have the right to seek an injunction against litigation for themselves at least.  Furthermore, so long as an individual has standing to seek an injunctive remedy as to herself, there is nothing in the doctrine of standing that prohibits seeking a broader remedy that would protect similarly situated individuals.  And finally, it is difficult even to apply the doctrine of standing to this situation, since courts always speak of standing as a constraint on the "justiciability" of cases and on who can be a *plaintiff*.  It is impossible for *defendants* to lack "standing."  To the extent that defendants' request for a protective injunction could be considered a "counterclaim" that requires separate standing, independent of that required from the plaintiffs, I find that the defendants have suffered an injury in fact, that injury is fairly traceable to the plaintiffs' conduct in this case and other cases, and the injunctive remedy sought will in fact redress that injury.

Finally, this case is ripe for an injunction against litigation. "The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998); *see also Iwachiw*, 396 F.3d at 529 (reaffirming this rule). It is clear that plaintiffs were given notice of the defendants' request for such an injunction, that they were given an opportunity to be heard, and that they actually were heard.

In short, all of the arguments offered by plaintiffs in opposing this injunction fail.

There is, however, one error that must be corrected. Judge Margolis entered the injunction against all state (and federal) litigation on "the claims and defendants involved in *Sullivan I*, *Sullivan II*, *Sullivan III*, or this present suit, *Sullivan IV*." R.R.2 at 7. That injunction was too broad, because Judge Kravitz's dismissal of pendent state-law claims in *Sullivan III* was not "on the merits" for *res judicata* purposes. *See St. Pierre v. Dyer*, 208 F.3d 394, 399-401 (2d Cir. 2000) (dismissal for lack of subject-matter jurisdiction is not adjudication on the merits and has no claim-preclusive effect); *McLearn v. Cowen & Co.*, 660 F.2d 845, 848 (2d Cir. 1981) (district court erred in dismissing pendent state claims on merits). Similarly, to the extent the First Recommended Ruling held in the alternative that some of plaintiffs' state-law claims should be dismissed on the merits, *see* R.R.1 at 25-26, that dismissal would have been without prejudice to amend those state-law claims. Such an opportunity has not, and will not, be provided to plaintiffs.

The State Attorney General's office, in its brief for the State Defendants, also concedes that passing any decision on the state claims might require this Court to decide novel questions of state law. See State Defs.' Resp. re. R.R.1 [doc. #45] at 12 n.6 ("[T]he Connecticut courts

appear not to have expressly addressed the statute of limitations for constitutional tort claims of the sort the plaintiffs allege . . . .   To the extent there is any uncertainty on that question, it counsels in favor of this Court declining to exercise supplemental jurisdiction over the plaintiffs' state law claims . . . .").  I agree, and this Memorandum of Decision avoids passing judgment on the merits of plaintiffs' state law claims.  It would be improper, then, to prohibit plaintiffs from seeking an answer to this question from the courts that are best-equipped to answer it.

Nevertheless, even though I have not adopted those portions of the First Recommended Ruling that dismiss state law claims on their merits, I believe Judge Margolis's analysis should give plaintiffs serious pause.  Plaintiffs should not proceed to file another action in state court without being fully prepared to address those deficiencies in their prior actions.

IV.      **Conclusion and Orders**

The First Recommended Ruling, Second Recommended Ruling, and Third Recommended Ruling are hereby approved and adopted as modified by the foregoing opinion.

Defendants' motions to dismiss are hereby GRANTED.  Plaintiffs' federal claims are dismissed with prejudice, because they are precluded on the basis of both claim and issue preclusion.  Plaintiffs' claims under state law are dismissed, without prejudice, for lack of subject matter jurisdiction.  The Clerk of Court is instructed enter judgment for defendants, with prejudice and without costs, and to close the file.

Furthermore, the two defense motions to enjoin plaintiffs against future litigation on this subject are GRANTED IN PART.  Plaintiffs' motions to strike those defense motions are DENIED.

**Plaintiffs must seek permission of this Court before filing any lawsuit, in any court** (state or federal), **alleging violations of *federal* law that relate to the subject matter of any of**

-29-

**their previous lawsuits** (*Sullivan I*, *Sullivan II*, *Sullivan III*, or this lawsuit, *Sullivan IV*).[21]  **If plaintiffs wish to seek such permission, they must file an application before me, consisting of a memorandum of no more than two (2) pages, describing the claims they wish to file and the reasons why those claims are not already precluded**.  Plaintiffs need not seek permission to file lawsuits that are wholly unrelated to their previous lawsuits, nor must they seek permission to file a federal complaint under 28 U.S.C. §§ 351 *et seq*.

Plaintiffs need not seek permission of this Court if they wish to pursue *only* their claims under Connecticut state law in a state court.  However, if they choose to file a lawsuit in state court, **plaintiffs are hereby ORDERED to attach to any such complaint a copy of this opinion, as well a copy of Judge Margolis's three recommended rulings [docs.  ##39, 40, 55] in this matter**.

The Court also advises plaintiffs that claims against defendants Sonneman and Malone are almost certainly barred by the doctrine of absolute prosecutorial immunity, as described in the State's brief [doc. #45] at 9-11, and claims against all defendants for misuse of process were not stated sufficiently, as described in the First Recommended Ruling at 25-26.  In addition, many or all of plaintiffs' claims may be time-barred, as detailed in the State's brief at 11-13.  Finally, many of the determinations reached by Judge Kravitz in *Sullivan III* — including the determination that the State Defendants were acting on a basis of probable cause — may have

---

21.       That subject matter is more fully described in Part I of this Memorandum, *supra*.  I am mindful of Fed. R. Civ. P. 65(d), which mandates that "[e]very order granting an injunction . . . must: . . . (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Nevertheless, it is impossible to capture the entire litigation history of these four lawsuits in one Memorandum of Decision, let alone in these concluding Orders.  Therefore, I refer to the previous actions out of necessity, and I allow plaintiffs an opportunity to petition this Court if they seek to file a new case which they consider to be outside the proscribed subject matter.

preclusive weight in a state-court action, making plaintiffs unable to establish the necessary elements for claims under state law.

Plaintiffs should anticipate that defendants will raise the arguments I have just described in a motion to dismiss any complaint under state law.  Therefore, if plaintiffs chose to file a complaint alleging state law violations that relate to the subject matter of any of their previous lawsuits, they should perform legal research on these particular issues to ensure that their claims have merit and can still be brought in good faith.  Furthermore, **plaintiffs are ORDERED to attach to any state complaint a memorandum,  no more than five (5) pages long, describing their research and their arguments why their claims should NOT be dismissed for the reasons stated above**.

Finally, nothing in these Orders shall limit the right of plaintiffs to appeal from this Memorandum of Decision and Order to the United States Court of Appeals for the Second Circuit.

It is SO ORDERED.

Dated: New Haven, Connecticut
       August 12, 2009

                                            ___/s/ Charles S. Haight, Jr._____
                                            Charles S. Haight, Jr.
                                            Senior United States District Judge